UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEMPUR-PEDIC NORTH AMERICA, LLC, SEALY MATTRESS COMPANY, DAN-FOAM APS, and SEALY TECHNOLOGY LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION H-17-1068 |
| MATTRESS FIRM, INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court are (1) the plaintiffs' motion for a temporary restraining order and preliminary injunction (Dkt. 6), and (2) the defendant's motion to dismiss under the *Colorado River* abstention doctrine (Dkt. 19).[1] After considering the motions, responses, reply, evidentiary record, and applicable law, the court finds that (1) the plaintiffs' motion for a temporary restraining order should be DENIED, but the court will set a hearing on the motion for a preliminary injunction (Dkt. 6), and (2) the defendant's motion to dismiss should be DENIED (Dkt. 19).

**I. BACKGROUND**

This case involves a business dispute between the plaintiffs, Tempur-Pedic North America, LCC ("Tempur-Pedic"), Sealy Mattress Company ("Sealy"), Dan-Foam APS, and Sealy Technology LLC (collectively "Tempur-Sealy"), and the defendant Mattress Firm, LLC ("Mattress Firm"). Dkt. 1. Mattress Firm is a mattress retailer that sells Tempur-Sealy branded mattresses. Dkt. 7 at 9.

---

[1] *Colorado River Conserv. Dist. v. United States*, 424 U.S. 800 (1976).

On January 1, 2014, plaintiffs Tempur-Pedic and Sealy each entered into retailer agreements with Mattress Firm. Dkt. 4, Exs. C, D. The agreements included a requirement that, upon termination, Mattress Firm would cease using Tempur-Sealy's intellectual property and holding itself out as a retailer of Tempur-Sealy products. *Id.* In January 2017, Tempur-Pedic, Sealy, and Mattress Firm terminated their relationship. Dkt. 7, Ex. F; Dkt. 18, Ex. A. Subsequently, the parties reached an agreement to allow Mattress Firm to continue to sell Tempur-Sealy products through April 3, 2017 (the "Letter Agreements"). Dkt. 3, Exs. 7–10; Dkt. 4, Exs. E, F, G, H; Dkt. 18, Ex. A.

On March 30, 2017, Mattress Firm filed suit against Tempur-Pedic and Sealy in Texas state court seeking damages for breach of the Letter Agreements, damages for tortious interference with prospective business relationships, and a declaratory judgment that it can use Tempur-Pedic and Sealy's intellectual property for the sale of its remaining inventory. Dkt. 19 at 2, Ex. A (*Mattress Firm v. Tempur-Pedic North America, LLC et al*, Cause No. 2017-22062, 165th Judicial District Court of Harris County, Texas).

On April 7, 2017, Tempur-Sealy filed a complaint in the Southern District of Texas against Mattress Firm for breach of contract and trademark infringement under common law and the Lanham Act. Dkt. 1. Then, Tempur-Sealy filed a motion for a temporary restraining order and a preliminary injunction. Dkts. 6, 7, 8, 17 (additional evidence). Mattress Firm responded, and Tempur-Sealy replied. Dkts. 18, 21.

On April 14, 2017, Mattress Firm filed a motion to dismiss Tempur-Sealy's complaint under the *Colorado River* abstention doctrine. Dkt. 19 (citing *Colorado River*, 424 U.S. 800). Tempur-Sealy responded. Dkt. 20.

## II. MATTRESS FIRM'S MOTION TO DISMISS

### A. Legal Standard

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 813. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id*. Abstention under the *Colorado River* doctrine applies "when suits are parallel, having the same parties and the same issues." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006) (*citing Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 540 (5th Cir. 2002)). However, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 813. "The party seeking a stay or dismissal of the federal case in the event of concurrent state and federal suits bears the burden of establishing the propriety of abstention under Colorado River." *Turner v. Pavlicek*, No. H–10–00749, 2011 WL 4458757, at *4 (S.D. Tex. Sept. 22, 2011) (Rosenthal, J.).

Once the court determines that the federal and state court suits are parallel, the Supreme Court identified six factors to determine whether the "exceptional circumstances" exist to abstain:

> (1) assumption by either court of jurisdiction over a res, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S. Ct. 927 (1983)). However, the factors are not applied "mechanically," but rather carefully balanced and "heavily weighted in favor of the exercise of jurisdiction." *Moses*, 460 U.S. at 2.

**B.     Analysis**

Mattress Firm filed a motion to dismiss under the *Colorado River* doctrine, requesting the court abstain in favor of the pending state court proceedings. Dkt. 19. First, the court will consider if the proceedings are parallel, and then review the six factors in determining if abstention is appropriate. *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014) ("As an initial step, before applying the factors, the court must determine if litigation is sufficiently parallel") (internal quotations omitted).

*1. Parallel litigation*

The federal and state court suit should involve the same parties and the same issues for the litigation to be considered parallel. *Stewart*, 438 F.3d at 491. However, this analysis does not require "a mincing insistence on precise identity" of parties and issues. *RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (holding that the litigation was not parallel because of disparate issues and parties, despite the same general subject matter jurisdiction).

First, the parties in the federal and state court cases are not the same. Here, the parties in the state court case are Mattress Firm as the plaintiff, and Tempur-Pedic and Sealy as the defendants. Dkt. 19, Ex. A. The federal court case includes two additional parties as plaintiffs, Dan-Foam APS and Sealy Technology LLC. Dkt. 1; Dkt. 20 at 10. Tempur-Sealy argues these two companies are owners of the trademarks at issue, and without being parties to the state court case, they cannot defend their rights. Dkt. 20 at 11. The court agrees that these two parties have a substantial interest in the outcome of the matter and are not parties to the state court case.

Second, the issues in the federal and state court cases are not the same. The claims in the state court case are breach of contract, a declaratory judgment that the contract allows Mattress Firm to continue to use Tempur-Sealy's intellectual property in promotional activities, and tortious

4

interference of sales contracts between Mattress Firm and its customers. Dkt. 19, Ex. A at 10–12. The claims in the federal court also include breach of contract. Dkt. 1 at 14. The federal case, however, includes eight additional causes of action not found in the state court case based on federal and common law trademark infringement. Dkt. 1 at 11–19.

The court acknowledges that the trademark issues in federal court are related to the underlying state court case, because Mattress Firm is asserting that it has a contractual right to use Tempur-Sealy's intellectual property. *Colorado River*, 424 U.S. at 816 ("[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction."); *see, e.g.*, *Rowley v. Wilson*, No. 05-30189, 2006 WL 2233221, at *1 (5th Cir. Aug.4, 2006) (unpublished opinion) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants were in the federal case and were not present in the state suit; and the plaintiff asserted claims in the federal case that were not asserted in the state suit). Though the issues in the two suits are certainly related, the court concludes that they are not the same issues as required for parallel litigation.

Because the state and federal court litigation do not involve the same parties nor the same issues, the court concludes that the litigation is not parallel. Therefore, Mattress Firm's motion to dismiss under the *Colorado River* abstention doctrine is DENIED. Dkt. 19.

*2.* Colorado River *factors*

Though the court has already determined that the motion to dismiss should be denied because the state and federal court litigation are not parallel, an abstention is also not appropriate under the six-factor *Colorado River* analysis. *Moses,* 460 U.S. at 16.

For the first factor, both parties suggest that it is not applicable because there is no *res* at issue in this case. Dkt. 19 at 2, Dkt. 20 at 13. However, the Fifth Circuit rejects this contention,

holding that the absence of a *res* weighs in favor of the federal court exercising jurisdiction. *Stewart*, 438 F.3d at 492 (citing *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir.1988)) ("[A]bsence of this factor . . . supports exercising federal jurisdiction."); *see also*, *Engenium Sols., Inc. v. Carr*, No. CIV.A.H-10-4412, 2012 WL 8432678, at *9 (S.D. Tex. Sept. 28, 2012) (Rosenthal, J.). Therefore, the court finds that this factor weighs against abstention.

Under the second factor, the forums are equivalent, both the state and federal cases are geographically situated in Houston, Texas. Dkt. 19 at 2; Dkt. 20 at 14. The court finds that this factor is neutral.

The third factor is the avoidance of piecemeal litigation. As the court has already observed, the contract claim in the state court case is an essential element of Mattress Firm's defense in the federal case that it is not violating Tempur-Sealy's trademark rights. Dkt. 19 at 2–3. If both suits are allowed to proceed, these issues being tried concurrently could lead to piecemeal litigation. Therefore, the court finds that this factor weighs in favor of abstention.

The fourth factor is the progress of each of the cases. The state court case was filed a week earlier than the federal case. Dkt. 19 at 3; Dkt. 20 at 13. However, first filing is not the only consideration. *Moses*, 460 U.S. at 103 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."); *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 651 (5th Cir. 2000) (holding a state suit filed first, but with no progress being made on the merits of the case in either the federal or state court, weighs against abstention). Here, in the state court case, at least as of the time of Tempur-Sealy's response to the motion to dismiss, Tempur-Pedic has not yet been served, and no appearances have been made. Dkt. 20 at 16. Therefore, the court finds that this factors weighs against abstention.

The fifth factor centers on the federal court's expertise in the subject matter of the case. As Tempur-Sealy notes, its claims include a federal cause of action under the Lanham Act. Dkt. 20 at 17. However, the court also observes that Tempur-Sealy's causes of action include common law trademark claims and contract claims that would be based in state law. Dkt. 19 at 3. The court finds that this factor is neutral.

Finally, the sixth factor addresses the state court's ability to protect the rights of the parties. Tempur-Sealy argues that its trademark rights cannot be protected in the state court because it has not even filed its counterclaims or answer yet to assert these rights in state court. Dkt. 20 at 18. The court finds that this argument is unpersuasive, because when Tempur-Sealy does assert those rights, the state court is an adequate forum to protect them. Therefore, the court finds this factor is neutral.

The court must balance these six factors "in favor of the exercise of jurisdiction." *Stewart*, 438 F.3d at 493. Here, three of the factors are neutral, two weigh against abstention, and one weighs in favor of abstention. When considering the balance of these factors weighed in favor of the exercise of jurisdiction, the court finds the results are insufficient to support the "exceptional" decision to abstain. *See*, *e.g.*, *Stewart*, 438 F.3d at 493 (deciding against abstention when all the factors are neutral except for piecemeal litigation); *Engenium Sols.*, 2012 WL 8432678, at *10 (noting that when "only two of the six factors counsel toward abstention," it may not be sufficient to overcome the balance in favor of exercise of jurisdiction).[2] Therefore, even if the court had concluded the cases were parallel, the court finds that the six factors under *Colorado River* and

---

[2] *See also* Josue Caballero, Note, *Colorado River Abstention Doctrine in the Fifth Circuit: The Exceptional Circumstances of a Likely Reversal,* 64 BAYLOR L.REV. 277, 289, 299–300 (2012) (tabulating the Fifth Circuit's reversals of district court decisions to abstain and finding that the Fifth Circuit reversed most appealed district court decisions to abstain under *Colorado River*, but has never reversed a district court's decision not to abstain).

*Moses*, when balanced with the exercise of federal jurisdiction, are insufficient to warrant an abstention.

### III. TEMPUR-SEALY'S MOTION FOR A TRO AND PRELIMINARY INJUNCTION

**A. Legal Standard**

A party seeking a temporary restraining order or a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure must demonstrate four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999). Injunctive relief, particularly at the preliminary stages of litigation, is an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Thus, injunctive relief should only be granted where the movant has "clearly carried the burden of persuasion." *Bluefield Water Ass'n*, 577 F.3d at 252–53; *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009).

**B. Analysis**

Tempur-Sealy moves for a temporary restraining order and a preliminary injunction to prevent Mattress Firm from continuing to use its intellectual property. Dkt. 6. However, injunctive relief is an extraordinary remedy, and the court finds that Tempur-Sealy has not met its burden of persuasion necessary for the court to grant a temporary restraining order based on two of the elements required for injunctive relief: (1) likelihood of success on the merits, and (2) irreparable injury. *Bluefield Water*, 577 F.3d at 252-53.

First, the court is unconvinced that Tempur-Sealy has established the likelihood of success on the merits. Tempur-Sealy has produced ample evidence that Mattress Firm is using Tempur-Sealy marks. *See, e.g.,* Dkt. 7, Exs 1–40; Dkt. 17, Exs. 1–14. Tempur-Sealy also claims that the Letter Agreements require Mattress Firm to cease using Tempur-Sealy marks except for those appearing on its remaining inventory and that it will confirm in writing its effort to remove the marks. Dkt. 8 at 17, Exs. 1–2, 15–40. Mattress Firm counters with evidence that the Letter Agreements also give it the right to use the marks in advertising its remaining inventory and that it has been removing the marks as required. Dkt. 18 at 13, Exs. B, E. Given this dispute, the court is unconvinced, at the temporary restraining order phase, that Tempur-Sealy has established the likelihood of success on the merits and the need for an immediate temporary restraining order.

Second, the court is not convinced that Tempur-Sealy is facing irreparable harm that makes injunctive relief the appropriate remedy. The "extraordinary equitable remedy" of an injunction requires that the plaintiff demonstrate that he will suffer an irreparable injury for which monetary damages are an inadequate remedy. *Brennan's, Inc. v. Brennan*, 289 F. App'x 706, 707 (5th Cir. 2008); *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008). Tempur-Sealy argues that money damages are "inadequate" because Mattress Firm's hold over use of Tempur-Sealy's trademarks is likely to cause confusion that Mattress Firm is an authorized retailer of Tempur-Pedic products. Dkt. 8 at 24.

The Fifth Circuit has opined that, in some circumstances, irreparable injury can be presumed based on a showing of a likelihood of confusion in a trademark infringement claim. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (holding that "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion, injury is presumed."); *see also Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th

Cir. 2008) (commenting that "[w]hen likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of the goods or services . . . ." but also noting "[t]his Court has avoided 'expressly adopting this presumption of irreparable injury. . .'" (quoting *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., LLC*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) (Rosenthal, J.) and *S. Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 188 (5th Cir. 1982)).

Here, however, there are two distinctions that rebut any presumption of harm arising from consumer confusion. First, Mattress Firm is using the Tempur-Pedic mark to sell Tempur-Sealy products, so it is unlikely that Tempur-Sealy will experience harm regarding its reputation for product quality, because Mattress Firm is selling genuine Tempur-Sealy products. Dkt. 18 at 23, Ex. A. Second, Mattress Firm has been using the Tempur-Sealy marks in the course of its business for twenty years. Dkt. 18 at 2. The court is not convinced that its additional short-term use of the mark poses a risk of immediate irreparable harm to Tempur-Sealy's customer good will and reputation because the two brands are already associated with each other. *Id*.

Tempur-Sealy also alleges that Mattress Firm's use of its mark is harming competing businesses selling Tempur-Sealy products, especially given the deeply discounted offerings made by Mattress Firm in its final sale of the Temper-Sealy mattresses in its inventory. Dkt. 8 at 24; Dkt. 18 at 24. Given the long standing business arrangement between these parties, the court concludes that, at this stage of the litigation, monetary damages may be more appropriate to remedy this type of harm than injunctive relief.

The court finds that Tempur-Sealy has not met the burden of persuasion on two of the elements necessary for the court to grant a temporary restraining order. Therefore, the court DENIES

Tempur-Sealy's motion for a temporary restraining order. Dkt. 6. However, the court will set an oral hearing on Tempur-Sealy's motion for a preliminary injunction.

### IV. CONCLUSION

Mattress Firm's motion to dismiss under the *Colorado River* doctrine is DENIED. Dkt. 19.

Tempur-Sealy's motion for a temporary restraining order is DENIED. Dkt. 6.

It is further ORDERED that an evidentiary hearing will be held on plaintiffs' motion for preliminary injunction on Tuesday, May 16, 2017 at 10:00 a.m. in Courtroom 9-D, 515 Rusk, Houston, Texas.

Signed at Houston, Texas on April 24, 2017.

_____
Gray H. Miller
United States District Judge