# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| TEMPUR-PEDIC NORTH AMERICA, LLC, | § | |
| SEALY MATTRESS COMPANY, DAN-FOAM APS, | § | |
| and SEALY TECHNOLOGY LLC, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1068 |
| | § | |
| MATTRESS FIRM, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court are (1) the plaintiffs' second emergency motion for a preliminary injunction (Dkt. 34); (2) the plaintiffs' motion to strike portions of the defendant's supplemental brief (Dkt. 56); and (3) the plaintiffs' third emergency motion for preliminary injunction (Dkt. 60). After considering the motions, responses, the arguments made at the hearing, supplemental briefing, evidentiary record, and the applicable law, the court finds that (1) the plaintiffs' second motion for a preliminary injunction (Dkt. 34) should be GRANTED IN PART; (2) the plaintiffs' motion to strike portions of the defendant's supplemental brief (Dkt. 56) should be GRANTED IN PART AND DENIED IN PART; and (3) the plaintiffs' third motion for a preliminary injunction (Dkt. 60) should be DENIED AS MOOT.

## I. BACKGROUND

This case involves an on-going business dispute between the plaintiffs, Tempur-Pedic North America, LCC ("Tempur-Pedic"), Sealy Mattress Company ("Sealy"), Dan-Foam APS, and Sealy Technology LLC (collectively "Tempur-Sealy"), and the defendant Mattress Firm, LLC ("Mattress Firm"). Dkts. 1, 27, 40, 59-1. Tempur-Sealy is a mattress manufacturer and distributor which owns

trademarks for Tempur, Tempur-Pedic, Sealy, Sealy Posturepedic, Sterns and Foster, and others (collectively, "Tempur-Sealy Marks"). Dkt. 3, Exs. A, B. Mattress Firm is a mattress retailer that sold Tempur-Sealy branded mattresses. Dkt. 7 at 9.

In January 2017, the parties dissolved their retailer agreements. Dkt. 46-1 (Master Retailer Agreements); Dkt. 59-1 at 3. Subsequently, the parties reached Letter Agreements to allow Mattress Firm to continue to order inventory and sell Tempur-Sealy products through April 2017. *Id.*; Dkt. 48-1–48-4 (Letter Agreements).

A.    **Procedural History**

Following the termination of the retailer agreements, the parties disputed whether Mattress Firm had a contractual right to continue using Tempur-Sealy's intellectual property as it wound down sales of its remaining Tempur-Sealy inventory. *See* Dkt. 23. On March 30, 2017, Mattress Firm filed suit against Tempur-Pedic and Sealy in Texas state court seeking damages for breach of the Letter Agreements, damages for tortious interference with prospective business relationships, and a declaratory judgment that it can use Tempur-Sealy's intellectual property for the sale of its remaining inventory. Dkt. 19 at 2, Ex. A (*Mattress Firm v. Tempur-Pedic N. Am., LLC*, No. 2017-22062, 165th Judicial District Court of Harris County, Texas).

On April 7, 2017, Tempur-Sealy filed a complaint in the Southern District of Texas against Mattress Firm for breach of contract and trademark infringement under common law and the Lanham Act. Dkt. 1. Tempur-Sealy amended its complaint three times to incorporate the allegations associated with its requests for injunctive relief. Dkts. 27, 40, 59-1.

With its initial complaint, Tempur-Sealy filed its first motion for a temporary restraining order and preliminary injunctive relief. Dkt. 6. Tempur-Sealy claimed that Mattress Firm was violating its trademarks by continuing to use its intellectual property in advertising despite the

termination of their retailer agreements. *Id.* Mattress Firm responded that it was permitted to use Tempur-Sealy Marks, per their contracts, while it sold its remaining Tempur-Sealy inventory. Dkt. 18. The court denied Tempur-Sealy's request for a temporary restraining order, and scheduled a hearing on its motion for a preliminary injunction. Dkt. 23. However, the parties reached an agreement and Tempur-Sealy withdrew its motion for injunctive relief. Dkts. 31, 59-1 at 13. Both parties agree that, as of May 8, 2017, Mattress Firm is no longer a Tempur-Sealy retailer. *Id.*; Dkt. 38 at 3.

On May 16, 2017, Tempur-Sealy filed a second emergency motion for a preliminary injunction. Dkt. 34. In this motion, Tempur-Sealy argued that Mattress Firm was infringing on its trademarks with a web page designed to sell competing mattress products. *Id.*; Dkt. 35. Specifically, Tempur-Sealy complained that the Mattress Firm web page found at http://www.mattressfirm.com/Tempur-Pedic[1] ("Mattress Firm Web Page")[2] uses Tempur-Sealy Marks in a way likely to confuse consumers. Dkt. 35 at 8. Tempur-Sealy also complained that Mattress Firm was purchasing advertisements on Google and Yahoo that incorporated Tempur-Sealy Marks to direct traffic to the Mattress Firm Web Page. *Id.* Mattress Firm responded, admitting to the existence and contents of its web page, but it asserted that its use of Tempur-Sealy Marks is allowable comparative advertising under the doctrine of nominative fair use. Dkt. 38 at 6–7.

---

[1] This URL redirects the user to http://www.mattressfirm.com/brand-product-search-1.html.

[2] The court is aware this web page is not featured on Mattress Firm's index page and that it is just one component of its larger web site. Dkt. 38 at 1. The court adopts this nomenclature merely because it is convenient and neutral. Tempur-Sealy calls this page and the page it directs to the "Bait Ads" and "Switch Web Page" (Dkt. 54 at 15) and Mattress Firm calls this page the "Comparative Webpage" (Dkts. 38, 55).

On May 23, 2017, the court held a preliminary injunction hearing. Dkt. 43. At the hearing, the court requested that the parties attempt to craft an agreed injunctive order within five days; if that failed, the court ordered the parties to provide supplemental briefings seven days later. *Id*. The parties failed to reach an agreement, and each filed supplemental briefings. Dkts. 54, 55. In its supplemental brief, Tempur-Sealy reasserted its request for injunctive relief barring Mattress Firm from using Tempur-Sealy Marks on its website or in any other advertising. Dkt. 54-1. In its supplemental brief, Mattress Firm, though expressing its opposition to an injunction, offered a proposed order that would limit its use of the Tempur-Sealy Marks while continuing to permit it to use the marks for comparative advertising. Dkt. 55 at 12 (referencing Dkt. 55-2).

Mattress Firm's supplemental briefing also included evidence of a post-hearing revision to its web page. Dkt. 55, Ex. 1-A. Tempur-Sealy filed a motion to strike portions of Mattress Firm's supplemental brief. Dkt. 56. Mattress Firm responded. Dkt. 58.

On June 16, 2017, Tempur-Sealy filed a third emergency motion for a preliminary injunction. Dkts. 60, 61. In its third motion, Tempur-Sealy complains that Mattress Firm is using the Tepur-Pedic name and mark in its advertising at http://www.sleepexperts.com ("Sleep Experts Web Page") and through the purchase of advertisements on Google to direct traffic to the Sleep Experts Web Page. Dkt. 61 at 5–6. On the same day, Mattress Firm responded by filing a letter that it sent to opposing counsel explaining that the Sleep Expert Web Page belonged to a subsidiary company which merged with Mattress Firm on May 31, 2017. Dkt. 62, Ex. A. Mattress Firm's letter states that the advertisement for Tempur-Sealy products following the merger was inadvertent and that it was removed by the filing date of the third motion. *Id*.

**B. Websites and Web Advertising**

The subjects of the second and third motions for preliminary injunctions are the Mattress Firm Web Page and the Sleep Expert Web Page, which Tempur-Sealy alleges infringe on its marks. Dkts. 35, 61. Mattress Firm does not dispute any of the evidence presented regarding the contents of its web pages. Dkts. 38; 62. Rather, Mattress Firm argues that the court should consider its revisions to the two web pages to remove the alleged infringing conduct. *Id*.

**1. Mattress Firm Web Page**

The subject of Tempur-Sealy's second motion for a preliminary injunction is the Mattress Firm Web Page. Dkt. 35 at 11. This web page has gone through at least four revisions. Dkts. 35-2, Exs. A ("first revision"), C ("second revision"); Dkt. 38, Ex. A-3 ("third revision"); Dkt. 55-1, Ex. A ("latest revision").[3] The Mattress Firm Web Page can be accessed by searching "Tempur-Pedic" with the Mattress Firm "Product Search" tool. Dkt. 35-2 (Fine Dec.). Beginning with the second revision, the Mattress Firm Web Page directs users to a second web page that advertises competing mattress brands. Dkt. 35-2, Ex. D; Dkt. 47-11.

**a. First and Second Revision**

The first and second revisions of the Mattress Firm Web Page contained a large banner at the top of the layout that headlines, in large font, "Tempur-Pedic Mattresses" and "Everything you need to know about Tempur-Pedic mattresses." Dkt. 35-2, Ex. A. Above the banner, another smaller banner advertises "Same And Next Day Delivery." *Id*. The first and second revisions of the web page contains several other banners that describe Tempur-Pedic mattresses, the Tempur-Pedic product lines, and the Tempur-Pedic company history. *Id*. Finally, at the bottom of the web page,

---

[3] The first, second, and third revisions were also admitted as evidence during the preliminary injunction hearing. Dkts. 47-9, 47-10, 47-12.

there is a table comparing various Tempur-Pedic brand mattresses to competing brands. *Id.* These two revisions had similar features, but the second revision included more detailed graphics, added a "Learn More" button that directed users to different web page advertising competing mattress brands, and contained a small disclaimer of affiliation at the very bottom of the web page. Dkt. 35-2, Ex. C.

### b. Third Revision

Mattress Firm's response describes the third revision of the Mattress Firm Web Page. Dkt. 38, Ex. A at 4–5 (describing the May 20, 2017 re-launch of the Mattress Firm Web Page). The third revision changes the headline text in the large-font banner from "Tempur Pedic Mattresses" to the generic phrase "Memory Foam Mattresses" and it removes the "same day delivery" banner. Dkt. 38, Ex. A-3. The "Learn More" button was changed to "Learn About Options." *Id.* Finally, the disclaimer of affiliation was re-positioned at the top of the web page, right beneath the headline banner. *Id.* The third revision retains multiple banners describing Tempur-Pedic from the previous revisions and it also continues to include a comparative list, comparing Tempur-Pedic products to other mattress brands. *Id.*

### c. Latest Revision

Mattress Firm claims in its supplemental briefing that it revised its web page one more time. Dkt. 55-1, Ex. A. The latest revision further reduces the number of times Tempur-Pedic is mentioned, deletes many of the Tempur-Pedic product descriptions, modifies the disclaimer to remove references to the termination of the parties retailer agreements, and changes the format of the comparative information into a more tabular form. *Id.*

### d. Google and Yahoo AdWords

Additionally, Tempur-Sealy alleges that Mattress Firm purchased Google and Yahoo AdWords (collectively, "AdWords") to direct internet traffic to the Mattress Firm Web Page following searches for phrases containing Tempur-Sealy brand names. Dkt. 35-2, Ex. B. Mattress Firm does not dispute that it purchased AdWords; however, its representative claims that it has at least temporarily ceased this practice. Dkt. 49 at 36; Dkt. 55 at 8. Mattress Firm counters that Tempur-Sealy purchases AdWords containing the trademarked brand name "Mattress Firm." Dkt. 38, Exs. A (Goodman Dec.), A-1, A-2; B (Hochman Dec.); Dkt. 42 at 22, 30.

### 2. Sleep Experts Web Page

The subject of the third motion for preliminary injunction is the Sleep Experts Web Page. Dkts. 60; 60-1 (Fine Dec.). Tempur-Sealy alleges that this website has content on the "Sale" tab that uses the Tempur-Pedic logo combined with an advertisement that says "Get $300 in accessories." Dkt. 60-1 at 2. Further, Tempur-Sealy alleges that when a user selects the "click here" button under the Tempur-Pedic logo, it brings up another website that sells competing mattress brands. *Id*. Finally, Tempur-Sealy alleges Mattress Firm purchased AdWords for various phrases that include "Tempur" and "Sealy" to direct traffic to the Sleep Experts Web Page. *Id.*

## II. LEGAL STANDARDS

### A. Injunctive Relief

A party seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure must demonstrate four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250,

252–53 (5th Cir. 2009); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999). Injunctive relief, particularly at the preliminary stages of litigation, is an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Thus, injunctive relief should only be granted where the movant has "clearly carried the burden of persuasion." *Bluefield Water Ass'n*, 577 F.3d at 252–53; *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009).

**B.    Trademark Infringement**

To prevail on a claim of trademark infringement under the Lanham Act, the plaintiff must show: (1) it possesses a valid mark; and (2) the defendant's use of its trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). However, "mere reproduction of a trademark does not constitute trademark infringement if there is no likelihood of confusion." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:28 (4th ed. 2009). And, "likelihood of confusion" is not possible confusion, it is probable confusion. *Bd. of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). In this respect, "[c]ontext is especially critical," and a court is required to "consider the marks in the context that a customer perceives them in the marketplace." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004).

When a mark is used in advertisement, the court must consider the "digits of confusion" in assessing whether the advertising "creates a likelihood of confusion as to affiliation or endorsement." *House of Vacuums Inc.*, 381 F.3d at 483 (citing *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 537 (5th Cir. 1998), abrogated on other grounds by *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S.Ct. 1255 (2001)).

The non-exhaustive digits of confusion factors are:

(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion . . . [and] (8) the degree of care exercised by potential purchasers.

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017) (internal quotations omitted).

## III. TEMPUR-SEALY'S MOTION TO STRIKE

Tempur-Sealy filed a motion to strike portions of Mattress Firm's supplemental brief, specifically: (1) the declaration of Brooks Tobin (Dkt. 55-1), (2) the latest revision of the Mattress Firm Web Page (*id.*, Ex. A), (3) a June 5 press release from Tempur-Sealy (*id.*, Ex. B), and (4) evidence of the parties' negotiations (Dkt. 55 at 4). Dkt. 56.

## A.    Tobin Declaration and the Latest Revision of the Mattress Firm Web Page

First, Mattress Firm offers the Tobin declaration and the latest revision of the Mattress Firm Web Page to demonstrate its good faith efforts to comply with the requirements of nominative fair use and to argue that injunctive relief is unnecessary. Dkt. 58. Voluntary cessation of challenged conduct does not moot the controversy. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). The defendant bears a "heavy burden" to prove that "subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170, 120 S. Ct. 693 (2000)).

Here, the court observes that a web page can be changed quickly and readily—the Mattress Firm Web Page has undergone four revisions in just over one month's time. Dkt. 58. Therefore, the alleged wrongful behavior could reoccur. When considering Tempur-Sealy's request for relief, the

court will consider the original alleged infringing behavior with the first, second, and third revisions of the Mattress Firm Web Page. Tempur-Sealy's motion to strike the declaration of Brooks Tobin (Dkt. 55-1) and the latest revision of the Mattress Firm Web Page (*Id*., Ex. A) is GRANTED IN PART. Dkt. 56. The court will not consider this evidence with respect to determining whether Tempur-Sealy is likely to succeed on its merits. Dkt. 56.

However, the court requested the parties file supplemental briefings, in part, to assist it in crafting appropriate injunctive relief if the parties failed to reach an agreement. Dkt. 49 at 49. Tempur-Sealy was admittedly aware of the latest revision and had the opportunity to utilize it in making arguments on the scope of the injunctive relief. Dkt. 54 at n.2. But Tempur-Sealy chose to double down on its request for the broadest possible injunctive order. Dkt. 54-1. The court finds that the Tobin Declaration and the latest revision of the Mattress Firm Web Page are helpful to the extent that they are consistent with the purpose of the supplemental briefing. Tempur-Sealy's motion to strike the declaration of Brooks Tobin (Dkt. 55-1) and the latest revision of the Mattress Firm Web Page (*Id*., Ex. A) is GRANTED IN PART. Dkt. 56. The court will utilize the declaration of Brooks Tobin (Dkt. 55-1) and the latest revision of the Mattress Firm Web Page (*Id*., Ex. A) as it deems necessary to aid in crafting the appropriate injunctive relief. Dkt. 56.

## B.    Press Release

Next, Mattress Firm offers the press release as evidence that Tempur-Sealy's profits are not being harmed and, therefore, argues that Tempur-Sealy cannot prove the irreparable injury element required for a injunctive relief. Dkt. 55 at 9. However, the court observes that a short term increase of profit is not necessarily evidence of lack of injury. For instance, Tempur-Sealy could hypothetically be suffering irreparable injury by having its profits increase at a lower rate. Therefore, the court will not rely on the press release when considering whether Tempur-Sealy is suffering

irreparable injury. Tempur-Sealy's motion to strike is GRANTED with respect to the press release (Dkt. 55-1, Ex.B). Dkt. 56.

## C.     Parties' Negotiations

Finally, Tempur-Sealy argues that the court should not consider any portions of the supplemental briefing that discuss the parties efforts to craft an agreed injunctive order. Dkt. 56 at 3. It is apparent from the opposing supplemental briefings that the parties failed to reach an agreement regarding an injunctive order. Dkts. 54, 55. The court does not find any briefing regarding the content of the parties' negotiation relevant to its consideration of the motions for injunctive relief. Dkt. 55 at 5. Therefore, Tempur-Sealy's motion to strike evidence of any negotiations regarding injunctive relief is GRANTED. Dkt. 56.

## IV. TEMPUR-SEALY'S SECOND MOTION FOR A PRELIMINARY INJUNCTION

Tempur-Sealy's second motion for a preliminary injunction alleges that Mattress Firm is infringing on Tempur-Sealy Marks on its Mattress Firm Web Page and through the purchase of AdWords. Dkts. 34, 35. Mattress Firm responds that its use of the Tempur-Sealy Marks on its web page is allowable under the nominative fair use doctrine. Dkt. 38.

## A.     Likelihood of Success

As an initial matter, there is no dispute that Tempur-Sealy is the properly registered owner of the trademarks at issue in this case. Dkt. 3, Exs. A, B; Dkt. 47-1; Dkt. 38 at 6 (acknowledging that the marks belong to Tempur-Sealy). Therefore, in considering whether Tempur-Sealy is likely to succeed on its trademark infringement claim, the court need only consider the second prong of trademark infringement—whether Mattress Firm's use of the Tempur-Sealy Marks creates "a likelihood of confusion as to source, affiliation, or sponsorship." *Elvis Presley*, 141 F.3d 188 at 193.

Tempur-Sealy argues that Mattress Firm's use of the Tempur-Sealy Marks creates a likelihood of confusion in a manner analogous to a holdover licensee, that the Mattress Firm Web Page creates initial interest confusion, and that the purchase of AdWords creates confusion. Dkt. 35. Mattress Firm defends its use of the Tempur-Sealy Marks based on the nominative fair use doctrine, the use of a disclaimer, and the unclean hands doctrine. Dkt. 38. The court will address each parties' arguments in turn.

### 1. Likelihood of Confusion

First, the court will consider the non-exhaustive digits of confusion. *Streamline*, 851 F.3d at 453. Mattress Firm is allegedly using Tempur-Sealy's exact marks to sell the same products that the marks identify (mattresses) using a common advertising medium (the Internet). Dkt. 35 at 15; Dkt. 54 at 18–19. Therefore, the court finds that the digits of confusion relating to the similarity of the two marks, the similarity of the products, the identity of the purchasers, and the identity of the advertising media, weigh in favor of a finding a likelihood of confusion. Tempur-Sealy did not present any evidence of actual confusion or the degree of care exercised by potential purchasers. *Id*. at 21. Mattress Firm argues that its intent was not to confuse consumers, but rather present comparative advertising. Dkt. 38.

"In addition to the listed factors, a court is free to consider other relevant factors in determining whether a likelihood of confusion exists." *Elvis Presley*, 141 F.3d at 194. For the case of advertising that admittedly uses another's mark, "[c]ontext is especially critical." *House of Vacuums Inc.*, 381 F.3d at 485. The court must also consider how the consumer views the Tempur-Pedic Marks in the context of the Mattress Firm Web Page to determine if there is a likelihood of confusion. *Id*. (warning that "[a] court applying the digits without regard to context would find that a majority of the digits indicate confusion in [cases of comparative advertising]"). Therefore, in this

case, the court will look at additional factors beyond the digits of confusion and consider the context in which the consumer perceives the Mattress Firm Web Page.

### a. Holdover Licensee Confusion

First, Tempur-Sealy argues that Mattress Firm is using its mark in a manner analogous to a holdover franchise licensee. Dkt. 35 at 14 (citing *Petro Franchise Sys. LLC v. All Am. Props., Inc.*, 607 F. Supp. 2d 781, 788 (W.D. Tex. 2009) and *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009)). In *Petro* and *TGI Friday's*, a former franchisee is using the franchise's trademark to continue to hold itself out as a franchised business after the alleged termination of the franchise agreement. 607 F. Supp at 781; 652 F. Supp. 2d at 767; *see also Choice Hotels Int'l, Inc. v. Frontier Hotels, Inc.*, No. CV H-15-2355, 2016 WL 4367993, at *1 (S.D. Tex. Aug. 15, 2016) (Miller, J.). The courts in these cases held that confusion was likely because the defendant was using the exact same mark in the exact same business, and the only issue was whether the defendant was still authorized to use the mark under a contract. *Id*. Tempur-Sealy argues that this case is the same, because Mattress Firm is a former Tempur-Sealy retailer, it formerly had the contractual right to use the mark, and it is using the Tempur-Sealy Marks to conduct the exact same business. Dkt. 35 at 14.

Unlike the franchisors in this line of cases, Tempur-Sealy does not actually directly assert a breach of contract claim as the basis for the second motion for a preliminary injunction. Dkt. 34 (asserting the Lanham Act as the grounds for injunctive relief); Dkt. 38 at 10; Dkt. 55 at 10. Though Tempur-Sealy makes arguments related to a cause of action in contract by claiming that it relied on Mattress Firm's representations when it withdrew its first motion for a preliminary injunction, Tempur-Sealy is not reasserting that first motion here. *Id*.; Dkt. 6. Rather it is seeking to enjoin a different type of alleged trademark infringement. *Compare* Dkt. 6 (moving to enjoin Mattress Firm

13

from using Tempur-Sealy Marks while selling its remaining Tempur-Sealy inventory), *with* Dkt. 34 (moving to enjoin Mattress Firm from using Tempur-Sealy Marks to sell competing mattress brands). Tempur-Sealy's supplemental brief appears to raise a new contractual argument that Mattress Firm has agreed to cease all use of its marks, including nominative fair use, by signing the Letter Agreements. Dkt. 54 at 16. Mattress Firm did not have the opportunity to respond fully to this new breach of contract argument because it was not part of the original motion. *See* Dkt. 56 at 2 (collecting authority on the importance of providing an opponent the opportunity to respond). Therefore, the court will not consider this argument.

Returning to the holdover franchise cases, the court disagrees that the present controversy is analogous because the defendants in the franchise cases did not assert a nominative fair use defense. *Petro*, 607 F. Supp. 2d at 781; *TGI Friday's*, 652 F. Supp. 2d at 767. Rather, the franchisee defendants argued that they still had a contractual license to use the franchise's marks. *Id.* Mattress Firm's defense in the present controversy over its web page is not based on its contractual right to use the mark like that of the holdover franchisee, but rather is premised on a defense of nominal fair use. Dkt. 38. Therefore, the court concludes that Tempur-Sealy is not entitled to a presumption that it will prevail on the merits of a likelihood of confusion claim in a manner similar to a claim against a holdover franchisee.

### b. Initial Interest Confusion

Tempur-Sealy argues that Mattress Firm's use of the Tempur-Sealy Marks is likely to create "initial interest" confusion by using the marks to draw customers in, while selling them a competing product. Dkt. 34 at 18 (citing *Elvis Presley*, 141 F.3d at 204, and *Bd. of Regents of the Univ. of Hous. Sys. ex rel. Univ. of Hous. Sys. & Its Member Inst. v. Hous. Coll. of Law, Inc.*, 214 F. Supp. 3d 573, 599 (S.D. Tex. 2016) (Ellison, J.)). A trademark infringement claim can be based on

confusion from "initial consumer interest" in addition to actual confusion.  *Elvis Presley*, 141 F.3d at 204.  "Initial-interest confusion gives the junior user credibility during the early stages of a transaction and can possibly bar the senior user from consideration by the consumer once the confusion is dissipated."  *Id.*; s*ee, e.g.*, *Hous. Coll. of Law*, 214 F. Supp. 3d at 599 (holding that even a sophisticated consumer may be affected by initial interest confusion).  The *Houston College of Law* case held that "more is required" when invoking the initial-interest doctrine than just showing that the defendant's acts might draw initial interest.  214 F. Supp. 3d at 599 (citing *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 518 (6th Cir. 2013)).  Initial-interest confusion requires a showing that it is actually brand confusion that draws the consumer's initial interest.  *Id*.

Here, the Mattress Firm Web Page, particularly in its first and second revisions, contains a number of elements that appear to trade on the Tempur-Sealy brand in order to draw in the consumer.  Dkts. 35-2, Exs. A, C.  Elements of the first and second revisions that trade on the Tempur-Sealy brand include: a headline banner with "Tempur-Pedic" in large font, a banner implying that product delivery is available, that the web page contains "everything you need to know" about Tempur-Pedic mattresses, a "learn more" button, a repetition of Tempur-Sealy brand names throughout the page, and another banner describing the various Tempur-Sealy products.  *Id*. The third revision mitigates some of these issues, particularly by removing the Tempur-Pedic name from the large-font headline banner, but it still retained some of these elements.  Dkt. 38, Ex. A-3. Furthermore, the consumer might be directed to the Mattress Firm Web Page by searching "tempur pedic" with Mattress Firm's search functionality, another factor the court finds might produce initial-interest confusion.  *Id*.  Mattress Firm was previously a long-standing Tempur-Sealy retailer, meaning when the web page is considered in the context of consumer perception, a consumer may more readily assume that Mattress Firm is affiliated with Tempur-Sealy.  Dkt. 35 at 19.  Therefore,

the court concludes that Mattress Firm Web Page's use of Tempur-Sealy Marks is likely to create initial-interest confusion.

### c. AdWords

Tempur-Sealy also argues that Mattress Firm's purchase of AdWords creates confusion. Dkt. 34 at 18. Mattress Firm responds that it is allowed to purchase AdWords incorporating Tempur-Sealy Marks based on precedent from other courts. Dkt. 38 at 16–17 (citing *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 855 (N.D. Tex. 2009); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.Supp. 2d 463 (S.D.N.Y. 2008); and *Designer Skin, LLC v. S&L Vitamins, Inc.*, 560 F. Supp. 2d 811 (D. Ariz. 2008)). Courts have consistently rejected the notion that buying or creating internet search terms, alone, is enough to raise a claim of trademark infringement. *See, e.g., Mary Kay*, 601 F. Supp. 2d at 855 (holding that purchasing key word advertisements does not "in and of itself" defeat a fair use defense); *see also 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1246 (10th Cir. 2013) (holding that no consumer confusion is created by the purchase of AdWords with another's trademark when the mark was not contained in the advertisement itself); *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) (warning that the court must not expand initial-interest confusion to the "context of legitimate comparative and contextual advertising" when considering whether AdWords create a likelihood of confusion).

Because the Fifth Circuit has not adopted a specific test to determine whether AdWords create a likelihood of confusion, the court will consider Mattress Firm's purchase of AdWords in the context of consumer perception to determine if it suggests affiliation or sponsorship. *Mary Kay*, 601 F. Supp. 2d at 855. Here, the AdWords direct consumers to the Mattress Firm Web Page, not Mattress Firm's main index page. Dkts. 47-16–47-27. The court has already found the first, second, and possibly the third revision of the Mattress Firm Web Page make extensive use of Tempur-Sealy

Marks and are likely to cause consumer confusion that the page is selling Tempur-Sealy products. A consumer navigating to the Mattress Firm Page by following a link promoted by AdWords after a search of a Tempur-Sealy product name is likely to perceive an affiliation with the Tempur-Sealy brand. However, the court concludes the corollary is also true—the mere purchase of AdWords alone, without directing a consumer to a potentially confusing web page, is not sufficient for a claim of trademark infringement. *Mary Kay*, 601 F. Supp. 2d at 855. Therefore, the court concludes that the purchase of Tempur-Sealy AdWords to direct users to the Mattress Firm Web Page supports a finding that Mattress Firm's use of the Tempur-Sealy Marks is likely to cause confusion.

### 2. Mattress Firm's Defenses

Because the court finds that Mattress Firm's Web Page's use of Tempur-Sealy Marks is likely to create confusion, it must consider if Mattress Firm's use of the marks is allowable fair use.

### a. Nominative Fair Use and Comparative Advertising

Mattress Firm argues that it is allowed to use Tempur-Sealy Marks in comparative advertising as a form of nominative fair use. Dkt. 38 at 6–7. Mattress Firm argues that web pages comparing Tempur-Sealy products to competitors are common in its industry and similar comparative advertising is used in other industries. *See, e.g.*, Dkt. 38, Exs. A-4–A-9.

The nominative fair use defense permits the use of "another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product . . . ." *Smack Apparel Co.*, 550 F.3d at 488 (holding that "an intent to rely upon the drawing power [of the intellectual property] in enticing fans of the particular universities to purchase their shirts" is not nominative fair use); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 270–71 (5th Cir. 1999). This defense is allowed "even if some residual confusion is likely." *Id.* "In order to avail oneself of the nominative fair use defense the defendant (1) may only use so much of the mark as

necessary to identify the product or service and (2) may not do anything that suggests affiliation, sponsorship, or endorsement by the markholder." *Smack Apparel*, 550 F.3d at 489 (internal quotations omitted). "Prominent and pervasive use of a mark will suggest affiliation, but mere reference to a marked product will not." *House of Vacuums Inc.*, 381 F.3d at 485 (citing *Pebble Beach*, 155 F.3d at 546, 552).

The court disagrees with Mattress Firm and concludes that the first and second revisions of the Mattress Firm Web Page go beyond comparative advertising. The first and second revisions make prominent and pervasive use of the Tempur-Sealy Marks by including a large-font headline banner that mentions Tempur-Pedic twice, repetitive use of Tempur-Sealy brand names throughout the page, and another banner describing the various Tempur-Sealy products. Dkts. 35-2, Exs. A, C. Mattress Firm provides a direct comparison of Tempur-Sealy products with other mattress brands only at the very bottom of the web page. *Id*. To get to the actual comparative information, the user would have to scroll past repeated mentions of Tempur-Sealy brand names and product descriptions. *Id*. The court finds that Mattress Firm went beyond using "as much of the mark as necessary" to identify Tempur-Sealy products for comparison purposes. *Smack Apparel*, 550 F.3d at 489

The third revision of the Mattress Firm Web Page alters some of these elements by changing the large-font headline from Tempur-Sealy to a more generic "Memory Foam Mattresses," and the "learn more" button to "learn about options." Dkt. 38, Ex. A-3. However, the web page still repeatedly uses the Tempur-Sealy brand names outside the context of the comparison information. *Id*. Ultimately, the third revision of the web page may be less likely to cause customer confusion than the previous revisions. *Id*. However, the court finds that the third revision, particularly because of the repeated use of the Tempur-Sealy brand names, continues to exhibit a pervasive use of the Tempur-Sealy Mark and exceeds what is necessary for comparison purposes. Therefore, the court

concludes that Mattress Firm is unlikely to succeed in a nominative fair use defense with respect to the first, second, and possibly third revisions of its web page.

### c. Disclaimer

Second, Mattress Firm argues that its use of a disclaimer prevents customer confusion. Dkt. 38 at 11–12. Tempur-Sealy counters that use of a disclaimer is a "tacit admission" that the website is likely to cause confusion. Dkt. 35 at 20; Dkt. 54 at 25 (citing *Pebble Beach*, 155 F.3d at n.35). Tempur-Sealy additionally argues that even if the use of a disclaimer can deter confusion, its placement and font size can be insufficient to counter any confusion. Dkt. 35 at 20–21 (citing *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1547 (11th Cir. 1985) and *Boston Prof'l Hockey Ass'n, Inc. v. Dall. Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975)). Tempur-Sealy argues that the disclaimer here is simply ineffective. *Id.*

However, even Tempur-Sealy's cited authorities, such as *Pebble Beach*, hold that "conspicuous disclaimers that disclaim affiliation may reduce or eliminate confusion." 155 F.3d at 552. District courts have drafted injunctive orders that require the use of prominent disclaimers to deter confusion. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 673 (5th Cir. 2000) (collecting cases of disclaimers). The Fifth Circuit recommends that in order to avoid an injunction that would otherwise stifle constitutionally protected speech, "[an] obvious mode of accommodation is a disclaimer that will officially dissociate the junior user of the mark from the senior user's product." *Id.; see also Abraham v. Alpha Chi Omega*, 708 F.3d 614, 628 (5th Cir. 2013) (discussing that even commercial speech interests can also weigh in favor of using disclaimers rather than an outright ban) (citing *Better Bus. Bureau of Metro. Hous., Inc. v. Med. Dir., Inc.*, 681 F.2d 397, 404 (5th Cir. 1982)).

Like all trademark analysis, the court will consider Mattress Firm's use of a disclaimer in the context the consumer perceives alleged infringing conduct. *House of Vacuums Inc.*, 381 F.3d at 485. The first revision of the Mattress Firm Web Page places the disclaimer at the bottom of the page in small print. The court finds that this is certainly not a sufficiently prominent placement to deter consumer confusion. However, in the subsequent revisions of the web page, the disclaimer is placed underneath the headline banner. The court finds that this improved placement has the effect of reducing some confusion; however it is not likely to be substantial enough to overcome the repeated use of Tempur-Pedic brand names. Therefore, the court concludes that, though a disclaimer can deter confusion, Mattress Firm's use of a disclaimer is unlikely to deter confusion with respect to how the consumer perceives the first, second, and third revisions of the Mattress Firm Web Page.

### c. Unclean Hands

Finally, Mattress Firm argues that Tempur-Sealy's attempts to bar its purchase of AdWords using phrases with Tempur-Sealy Marks is inequitable because Tempur-Sealy is engaged in the same behavior. Dkt. 38 at 15 (citing *Sugar Busters*, 177 F.3d at 272); Dkt. 38, Ex. A (Goodman Dec.). Mattress Firm presented evidence that Tempur-Sealy purchased Google AdWords using the Mattress Firm company name to drive traffic toward its products and away from Mattress Firm. Dkt. 38, A-11–A-13; Dkt. 49 at 21–24.

 "Unclean hands is a defense to a Lanham Act infringement suit . . . . In its claim for equitable relief, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Sugar Busters*, 177 F.3d at 272 (quoting *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir.1997)) (internal quotations omitted).

Here, though, Mattress Firm does not accuse Tempur-Sealy of using AdWords to direct consumers to a web page that might confuse consumers regarding its affiliation with Mattress Firm.

Dkt. 54 at 26. Therefore, the court finds that Tempur-Pedic's conduct is not inequitable compared to Mattress Firm's conduct.

Because the court finds that the first two revisions of the Mattress Firm Web Page, and potentially the third revision, are likely to cause confusion and use more of the Tempur-Sealy Marks than is necessary for comparative advertising, the court concludes that Tempur-Sealy has demonstrated it is likely to succeed on the merits of a trademark infringement claim.

## B.    Irreparable Injury

The "extraordinary equitable remedy" of an injunction requires that the plaintiff demonstrate that it will suffer an irreparable injury for which monetary damages are an inadequate remedy. *Brennan's, Inc. v. Brennan*, 289 F. App'x 706, 707 (5th Cir. 2008); *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008).

For a trademark infringement claim, the Fifth Circuit has opined that, in some circumstances, irreparable injury can be presumed based on a showing of a likelihood of confusion *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (holding that "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion, injury is presumed."); *see also Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008) (commenting that "[w]hen likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of the goods or services . . ." but also noting "[t]his Court has avoided 'expressly adopting this presumption of irreparable injury. . . .'" (quoting *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., LLC*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) (Rosenthal, J.) and *S. Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 188 (5th Cir. 1982)).

Tempur-Sealy argues that it has demonstrated a likelihood of confusion that entitles it to the presumption of irreparable harm. Dkt. 35 at 21–22. Tempur-Sealy further argues that it will be difficult to quantify any diverted customers who "learn more" about the competing mattress brands and that it has lost control over how its mark is used. *Id.* (citing *Quantum Fitness*, 83 F. Supp. 2d at 831).

Here, the court finds that the Mattress Firm Web Page has the potential to divert customers from Tempur-Sealy products to competing products, and that diversion is difficult to quantify. Therefore, the court concludes that Tempur-Sealy will suffer irreparable harm without an injunction.

## C. Balance of Equities and Public Interest

With respect to the public interest, "[the] public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness*, 83 F. Supp. 2d at 832 (internal citations omitted). Therefore, the court concludes that an injunction requiring Mattress Firm to comply with the Lanham Act is in the public interest.

In considering the balance of equities, Tempur-Sealy is harmed by the infringement of its trademarks. *Paulsson Geophysical*, 529 F.3d at 313 ("The irreparable injury element is inherently related to the balance-of-harms analysis."). Tempur-Sealy argues the appropriate relief should be a complete bar on Mattress Firm using its marks. It argues for that this broad relief is necessary to avoid a game of "whack-a-mole" with Mattress Firm's revisions to its website. Dkt. 54 at 24; *see also* Dkt. 49 at 45–46.

Mattress Firm argues that competing mattress retailers engage in allowable comparative advertising. Dkt. 38 at 15. Enjoining Mattress Firm from also being able to engage in comparative advertising or purchase AdWords puts it at a disadvantage in the market. *Id.*; Dkt. 55 at 11.

The balance of equities generally disfavors a broad injunction and "[the] injunction should not be so broad that it bars admittedly lawful activities." *Diageo N. Am., Inc. v. Mexcor, Inc.*, 661 F. App'x 806, 814 (5th Cir. 2016). Injunctions "for trademark infringement should be no broader than necessary to prevent the deception." *Westchester Media*, 214 F.3d 658 at 671.

The court concludes that a narrowly tailored injunction balances the equities by preventing harm to Tempur-Sealy from trademark infringement while still allowing Mattress Firm to use the Tempur-Sealy Marks consistent with the nominative fair use doctrine. Therefore the injunctive relief will allow Mattress Firm to maintain a web page that uses Tempur-Sealy Marks for the limited purpose of comparative advertising. But the injunctive relief will require Mattress Firm to limit its use of Tempur-Sealy Marks to an amount necessary for the comparison and will require a disclaimer to further reduce the likelihood of confusion. Because the court has concluded that the purchase of AdWords alone, without directing consumers to a potentially confusing website, is unlikely to cause customer confusion, the AdWords will not be included in the injunction. *Mary Kay*, 601 F. Supp. 2d 839 at 855.

Mattress Firm provided a proposed injunctive order that mostly achieves these equitable goals. Dkt. 55-2. Therefore, the Tempur-Sealy's second motion for a preliminary injunction (Dkt. 34) is GRANTED IN PART, but the court will adopt a modified version of Mattress Firm's proposed injunctive order.

**E.    Bond.**

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or

restrained." Fed. R. Civ. P. 65(c). The amount of security "is a matter for the discretion of the trial court." *Kaepa, Inc. v. Achilles Corp*, 76 F.3d 624, 628 (5th Cir. 1996) (internal quotations omitted).

Tempur-Sealy requests a small bond, arguing that it has a high likelihood of success on the merits. Dkt. 54 at 30–31. Mattress Firm argues that the bond should be high because the broad injunction that Tempur-Sealy requested could result in substantial harm to its business. Dkt. 38 at 15 (suggesting a ten million dollar bond). However, the court will be issuing a more narrow injunction than Tempur-Sealy requested, which allows Mattress Firm to continue to fully compete in the market place through comparative advertising. Further, Mattress Firm has already corrected the allegedly offending web page, so it is unlikely to incur further expenses to comply with this order. Dkt. 55-1, Ex. A. Finally, the court finds that Tempur-Sealy is likely to succeed on the merits of its claim. Therefore, the court concludes that a relatively low bond amount is appropriate. The court ORDERS that this preliminary injunction will not be effective until Tempur-Sealy posts a $10,000.00 bond.

## V. TEMPUR-SEALY'S THIRD MOTION FOR A PRELIMINARY INJUNCTION

Tempur-Sealy's third motion for a preliminary injunction alleges that Mattress Firm is infringing on Tempur-Pedic Marks on its Sleep Experts Web Page and through the purchase of AdWords. Dkt. 61 at 5–6. Mattress Firm responded that the alleged conduct was inadvertent and that it has removed all references to Tempur-Pedic on the Sleep Experts Web Page. Dkt. 62.

The court concludes that it need not rule on this motion. The injunctive relief granted herein for Tempur-Sealy's second motion for a preliminary injunction prohibits Mattress Firm from using Tempur-Sealy Marks except for allowable comparative advertising and in warranty information. Because the court has already granted relief that encompasses the alleged conduct that is the subject of this motion, Tempur-Sealy's third motion for injunctive relief is DENIED AS MOOT.

## VI. CONCLUSION

The court GRANTS IN PART AND DENIES IN PART Tempur-Sealy's motion to strike. Dkt. 56.

The court DENIES AS MOOT Tempur-Sealy's third motion for a preliminary injunction. Dkt. 60.

The court GRANTS IN PART Tempur-Sealy's second motion for a preliminary injunction and ORDERS as follows:  Dkt. 34.

1.  Mattress Firm and all persons acting under its direction or control may use the names Tempur-Pedic or Tempur on the Mattress Firm Web Page, a sample of which was admitted as Exhibit 14 at the hearing on May 23, 2017, or any subsequent web page, subject to the following restrictions:

> (a) The Mattress Firm Web Page shall include a disclaimer statement in the top quarter of the web page stating that "Mattress Firm, Inc. is not an authorized reseller of Tempur-Pedic products and is not affiliated with either Tempur-Pedic North America, LLC or Tempur Sealy International, Inc."  The text of the disclaimer shall be in a font size that is at least 4 points larger than the majority of the text on the web page;
>
> (b) The number of references to "Tempur-Pedic" or "Tempur" shall be limited to seven (7). This limitation does not apply to individual product names or descriptions, or to the above-referenced disclaimer, which shall not count toward the total number of references; and

(c) The terms "Tempur-Pedic" or "Tempur" must appear in a font size consistent with the other text on the web page except when used in the disclaimer as specified by the restriction in (a).

2. Mattress Firm may change or modify the Mattress Firm Web Page's appearance or content as long as the above-noted limitations are followed.

3. Mattress Firm may maintain the references to TEMPUR-PEDIC® on the "Mattress Warranty" page of its website in their current form.

4. If the plaintiffs believe that any future revisions to the Mattress Firm Web Page or other comparative advertisements violate the terms of this order, the plaintiffs' counsel shall meet and confer with Mattress Firm's counsel in a good faith effort to resolve the dispute before seeking relief from the Court.

5. It is further ORDERED that this Preliminary Injunction will not be effective unless and until Tempur-Sealy executes and files with the court a bond in conformity with the law, or a cash deposit in lieu thereof, in the amount of $10,000.00.

THIS ORDER shall remain in effect until final judgment or further order of the Court or agreement of the parties.

Signed at Houston, Texas on July 11, 2017.


_____
Gray H. Miller
United States District Judge