

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TEMPUR-PEDIC NORTH AMERICA, LLC, SEALY MATTRESS COMPANY, DAN-FOAM APS, AND SEALY TECHNOLOGY LLC, | §<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | CIVIL ACTION NO. 4:17-CV-1068 |
| v. | §<br>§ | |
| MATTRESS FIRM, INC., | §<br>§ | |
| Defendant. | §<br>§ | |

**PLAINTIFFS' SUPPLEMENTAL ANSWERS**
**TO DEFENDANT'S INTERROGATORY NOS. 5, 7, 8, 11 AND 12**

Pursuant to Rule 26 and Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Tempur-Pedic North America, LLC, Sealy Mattress Company, Dan-Foam APS, and Sealy Technology, LLC (hereinafter "Tempur-Sealy" or "Plaintiffs") hereby provide the following supplemental answers to Defendant's Interrogatories Nos. 5, 7, 8, 11 and 12.

**INTERROGATORY NO. 5:**

Identify all customers you lost based on Mattress Firm's alleged false or deceptive advertising.

**RESPONSE TO INTERROGATORY NO. 5:**

Tempur-Sealy objects to this Interrogatory as premature and because it calls for information that is within the possession, custody, or control of Mattress Firm. For example, Mattress Firm possesses data that will show the uniform resource locators (URLs) to which users were diverted by Mattress Firm's website advertising, also known as "exit URLs," but Mattress Firm has not produced that data to Tempur-Sealy. Discovery in this matter is ongoing, the

computation of Tempur-Sealy's damages will be the subject of expert testimony, and Tempur-Sealy reserves the right to amend this response.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

Tempur-Sealy states that it cannot identify specific customers it lost because of Mattress Firm's false and deceptive advertising and unauthorized use of the Tempur-Sealy Marks, and further states that the impossibility of quantifying -- much less identifying -- potential customers diverted by Mattress Firm's false and deceptive advertising and unauthorized use of the Tempur-Sealy Marks demonstrates that Tempur-Sealy continues to suffer irreparable harm as a result of the ongoing use of those marks.  *See* July 11, 2017 Order ("Here, the court finds that the Mattress Firm Web Page has the potential to divert customers from Tempur-Sealy products to competing products, and that diversion is difficult to quantify.").

In further response, Tempur Sealy incorporates by reference the expert report of Christine S. Meyer, Ph.D. dated October 18, 2017 ("Meyer Report").  As set forth in that report, but for Mattress Firm's unauthorized use of the Tempur-Sealy trade names and marks to advertise products at deep discounts and as clearance items between March and May 2017, Tempur-Pedic would have sold substantially more mattresses than it actually did between March and early May 2017.  (Meyer Report, ¶ 8).  Tempur-Sealy's lost profits from sales of Tempur-Pedic products to retailers amounted to $11.8 million, and Tempur-Sealy's lost profits from direct-to-consumer sales of Tempur-Pedic products amounted to $1.7 million.  (*Id.*, ¶ 51).  These lost profits were only one component of the harm to Tempur-Sealy from the wrongful conduct of Mattress Firm; the overall impact on Tempur-Sealy from Mattress Firm's unauthorized use of the Tempur-Sealy names and marks could not be quantified.  (*Id.*, ¶ 10).

**INTERROGATORY NO. 7:**

State the amount allegedly owed by Mattress Firm to Sealy, how you calculated that amount, and identify any credits or offsets to this amount that you applied or dispute, and the basis for your rejection of any credit or offset.

**RESPONSE TO INTERROGATORY NO. 7:**

Tempur-Sealy states that, as of August 18, 2017, $1,151,208.68 was due for product ordered by Mattress Firm and accepted from Sealy, which amount includes applicable interest. In further response, Tempur-Sealy refers Mattress Firm to the calculations attached hereto. Tempur-Sealy is also entitled to attorneys' fees in connection with this dispute. Tempur-Sealy's damages, including interest and attorneys' fees, continue to accrue, and Tempur-Sealy reserves the right to amend this response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Tempur-Sealy states that, as of September 22, 2017, $1,159,853 was due for product ordered by Mattress Firm and accepted from Sealy, which amount includes applicable interest. In addition, as of September 22, 2017, $219,283 was due Tempur-Pedic based on an overpayment made by Tempur-Pedic to Mattress Firm on May 3, 2017. On June 1, 2017, Erica Lane, Assistant Controller for Mattress Firm, acknowledged that Mattress Firm owed Tempur-Pedic for the overpayment and advised that Mattress Firm would be sending a check to cover that overpayment. On June 2, 2017, Mattress Firm sent a check to Sealy in the amount of $919,062. In that remittance, Mattress Firm identified specific Sealy invoices to which to apply that payment. After receiving that remittance, Tempur-Pedic asked Mattress Firm whether it would be sending an additional check for the $219,283 overpayment. On June 2, 2017, Nate Esser, Corporate Controller for Mattress Firm, conceded that Mattress Firm owed Tempur-Pedic $219,000 but advised that it would not issue another check. To date, Mattress Firm has not issued Tempur-Pedic a check in the amount of $219,283. Tempur-Sealy is also entitled to

attorneys' fees in connection with this dispute.  Tempur-Sealy's damages, including interest and attorneys' fees, continue to accrue, and Tempur-Sealy reserves the right to amend this response.

**INTERROGATORY NO. 8:**

> State the total amount of monetary damages you claim in this case, the basis for those damages, the means of calculation thereof, and identify all documents reviewed, created, relied on, or considered concerning those damages.

**RESPONSE TO INTERROGATORY NO. 8:**

Tempur-Sealy states that it has incurred damage due to Mattress Firm's improper use of the Tempur-Sealy Marks in breach of the January 30, 2017 Letter Agreements and in violation of the Lanham Act and due to Mattress Firm's false and deceptive advertising.  Tempur-Sealy may seek to recover damages it has suffered in the form of (1) lost sales, (2) costs incurred to rehabilitate its brand image, and (3) a reasonable royalty payment based on Mattress Firm's unauthorized use of its intellectual property.  Pursuant to 15 U.S.C. § 1117(a), Tempur-Sealy is also entitled to recover Mattress Firm's profits.  Discovery into Tempur-Sealy's damages is ongoing and will be the subject of expert testimony.  Sealy is also entitled to damages based on Mattress Firm's failure to pay for product ordered and accepted from Sealy and refers Mattress Firm to its response to Interrogatory No. 7.  Tempur-Sealy also seeks the costs of this action and its attorneys' fees.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Tempur-Sealy states that it has incurred monetary damages due from Mattress Firm's improper use of the Tempur-Sealy Marks in breach of the January 30, 2017 Letter Agreements and in violation of the Lanham Act, and incorporates by reference the expert report of Christine S. Meyer, Ph.D. dated October 18, 2017 ("Meyer Report").  As set forth in that report, but for Mattress Firm's unauthorized use of the Tempur-Sealy trade names and marks to advertise products at deep discounts and as clearance items between March and May 2017, Tempur-Pedic

would have sold substantially more mattresses than it actually did between March and early May 2017.  (Meyer Report, ¶ 8).  Tempur-Sealy's lost profits from sales of Tempur-Pedic products to retailers amounted to $11.8 million, and Tempur-Sealy's lost profits from direct-to-consumer sales of Tempur-Pedic products amounted to $1.7 million.  (*Id.*, ¶ 51).

Tempur-Sealy is also entitled to damages based on Mattress Firm's failure to pay for product ordered and accepted from Sealy and Tempur-Pedic, and refers Mattress Firm to its response to Interrogatory No. 7.  Tempur-Sealy also seeks the costs of this action and its attorneys' fees.

## INTERROGATORY NO. 11:

State the dollar amount and the basis for each alleged category or element of damages set forth in your Complaint, including:

(a)  Actual damages;

(b)  Loss of customer goodwill;

(c)  Loss of reputation;

(d)  Diminished capacity to compete;

(e)  Diverted business;

(f)  Lost profits in the past;

(g)  Lost profits in the future;

(h)  Costs and expenses;

(i)  Other loss;

(j)  Mattress Firm's unjust enrichment.

## RESPONSE TO INTERROGATORY NO. 11:

Tempur-Sealy objects to this Interrogatory as premature.  Discovery in this matter is ongoing, the computation of Tempur-Sealy's damages will be the subject of expert testimony, and Tempur-Sealy reserves the right to amend this response.

41854056v.2

In further response, Tempur-Sealy states that it has incurred irreparable harm to its goodwill and reputation due to Mattress Firm's improper use of the Tempur-Sealy Marks for which there is no adequate remedy at law.  Tempur-Sealy incorporates by reference its responses to Interrogatory Nos. 1-4 and the Court's July 11, 2017 Order enjoining Mattress Firm from certain uses of Tempur-Sealy Marks.   With regard to monetary damages, Tempur-Sealy incorporates by reference its responses to Interrogatory Nos. 7 and 8.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Tempur-Sealy states that it has incurred irreparable harm to its goodwill and reputation due to Mattress Firm's improper and unauthorized use of the Tempur-Sealy Marks and false and deceptive advertising for which there is no adequate remedy at law.  Tempur-Sealy incorporates by reference its responses to Interrogatory Nos. 1-4 and the Court's July 11, 2017 Order enjoining Mattress Firm from certain uses of Tempur-Sealy Marks.  With regard to monetary damages, Tempur-Sealy incorporates by reference its Supplemental Responses to Interrogatory Nos. 7 and 8.

**INTERROGATORY NO. 12:**

Identify all customers you lost based on Mattress Firm's alleged trademark infringement or other conduct.

**RESPONSE TO INTERROGATORY NO. 12:**

Tempur-Sealy objects to this Interrogatory as premature and because it calls for information that is within the possession, custody, or control of Mattress Firm.  For example, Mattress Firm possesses data that will show the uniform resource locators (URLs) to which users were diverted by Mattress Firm's website advertising, also known as "exit URLs," but Mattress Firm has not produced that data to Tempur-Sealy.   In further response, Tempur-Sealy incorporates by reference its response to Interrogatory No. 8.   Discovery in this matter is

ongoing, the computation of Tempur-Sealy's damages will be the subject of expert testimony, and Tempur-Sealy reserves the right to amend this response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Tempur-Sealy states that it cannot identify specific customers it lost because of Mattress Firm's false and deceptive advertising and unauthorized use of the Tempur-Sealy Marks, and further states that the impossibility of quantifying -- much less identifying -- potential customers diverted by Mattress Firm's false and deceptive advertising and unauthorized use of the Tempur-Sealy Marks demonstrates that Tempur-Sealy continues to suffer irreparable harm as a result of the ongoing use of those marks.  See July 11, 2017 Order ("Here, the court finds that the Mattress Firm Web Page has the potential to divert customers from Tempur-Sealy products to competing products, and that diversion is difficult to quantify.").

In further response, Tempur Sealy incorporates by reference the expert report of Christine S. Meyer, Ph.D. dated October 18, 2017 ("Meyer Report").  As set forth in that report, but for Mattress Firm's unauthorized use of the Tempur-Sealy trade names and marks to advertise products at deep discounts and as clearance items between March and May 2017, Tempur-Pedic would have sold substantially more mattresses than it actually did between March and early May 2017.  (Meyer Report, ¶ 8).  Tempur-Sealy's lost profits from sales of Tempur-Pedic products to retailers amounted to $11.8 million, and Tempur-Sealy's lost profits from direct-to-consumer sales of Tempur-Pedic products amounted to $1.7 million.  (*Id.*, ¶ 51).  These lost profits were only one component of the harm to Tempur-Sealy from the wrongful conduct of Mattress Firm; the overall impact on Tempur-Sealy from Mattress Firm's unauthorized use of the Tempur-Sealy names and marks could not be quantified.  (*Id.*, ¶ 10).

41854056v.2

As to objections only,

**TEMPUR-PEDIC NORTH AMERICA, LLC, SEALY MATTRESS COMPANY, DAN-FOAM APS, SEALY TECHNOLOGY LLC,**

By their attorneys,

*/s/ William F. Benson*

Robert J. Carty, Jr., Attorney-in-Charge
Texas Bar No. 00788794
S.D. Texas I.D. No. 22790
Jesse M. Coleman
Texas Bar No. 24072044
S.D. Texas I.D. No. 1101514
Nicholas Grimmer
Texas Bar No. 24065331
S.D. Texas I.D. No. 1002170
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, TX 77002
713-225-2300

William N. Berkowitz (admitted *pro hac vice*)
Brandon L. Bigelow (admitted *pro hac vice*)
William F. Benson (admitted *pro hac vice*)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
Dated:  November 10, 2017        617-946-4800

8

41854056v.2

## VERIFICATION

I, Joseph Kamer, hereby declare:

I am Senior Vice President, General Counsel, and Secretary for Tempur Sealy International, Inc. As part of my duties, I am authorized to sign the Verification of the foregoing Supplemental Answers to Defendant's Interrogatories Nos. 5, 7, 8, 11 and 12 (the "Supplemental Responses"). The facts stated in the Supplemental Responses were assembled by individuals with personal knowledge and, to the best of my knowledge, all statements contained therein are true and correct.

Signed under the pains and penalties of perjury this 6th day of November, 2017.

_____

Joseph Kamer
Senior Vice President, General Counsel, and Secretary
Tempur Sealy International, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2017 the foregoing document was sent via email to all counsel of record, including the following:

John B. Thomas, Esq.
Kelsey Machado Esq.
HICKS THOMAS LLP
700 Louisiana St., Suite 2000
Houston, TX  77002

*/s/ William F. Benson*
William F. Benson

41854056v.2