UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEMPUR-PEDIC NORTH AMERICA, LLC, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1068 |
| | § | |
| MATTRESS FIRM, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendant Mattress Firm, Inc.'s ("Mattress Firm") motion for partial summary judgment (Dkt. 105) and plaintiffs' cross-motion for partial summary judgment (Dkt. 109). Having considered the motions, responses, replies, evidence, and applicable law, the court is of the opinion that Mattress Firm's motion should be GRANTED IN PART and DENIED IN PART and plaintiffs' motion should be DENIED.

### I. BACKGROUND

This case involves an on-going business dispute between the plaintiffs, Tempur-Pedic North America, LCC ("Tempur-Pedic"), Sealy Mattress Company ("Sealy"), Dan-Foam APS, and Sealy Technology LLC (collectively "Tempur-Sealy"), and Mattress Firm. Dkt. 101. Tempur-Sealy is a mattress manufacturer and distributor which owns trademarks for Tempur, Tempur-Pedic, Sealy, Sealy Posturepedic, Sterns and Foster, and others (collectively, "Tempur-Sealy Marks"). Dkt. 3-1; Dkt. 3-2. Mattress Firm is a mattress retailer that sold Tempur-Sealy branded mattresses for nearly 20 years. Dkt. 105-1 at 2. While Mattress Firm was an authorized Tempur-Sealy retailer, the parties' relationships were governed by two Master Retailer Agreements ("MRA") that are

substantially similar: one with Sealy ("Sealy MRA") and one with Tempur-Pedic ("Tempur MRA"). *Id.* at 3; Dkt. 105-2 (Sealy MRA); Dkt. 105-3 (Tempur MRA).

In January 2017, the parties dissolved their MRAs. Dkt. 105-1 at 4, 6. Then, Mattress Firm entered into letter agreements with Tempur-Pedic ("Tempur Letter Agreement") and Sealy ("Sealy Letter Agreement") (collectively, "Letter Agreements"), which governed the parties' relationship following the termination of the MRAs. Dkt. 105-12 (Tempur Letter Agreement); Dkt. 105-11 (Sealy Letter Agreement). Under the Letter Agreements, Tempur-Sealy and Mattress Firm agreed that their relationship would continue through April 3, 2017. Dkt. 105-12 at 2; Dkt. 105-11 at 2. Tempur-Sealy agreed to continue to sell its products to Mattress Firm through that date at a volume of up to "110% of the corresponding period in 2016." Dkt. 105-12 at 3; Dkt. 105-11 at 3.

Section 6 of the Letter Agreements requires that no later than April 3, 2017, "Mattress Firm must promptly cease using all [Tempur-Sealy] trademarks, trade names, images, and promotional materials . . . and shall cease holding itself out in any way as an authorized [Tempur-Sealy] retailer." Dkt. 105-12 at 4–5; Dkt. 105-11 at 4. However, Section 6 permits Mattress Firm to use Tempur-Sealy Marks "for the limited purposes set forth in . . . section 8.c.iii and in 8.d of the MRA." Dkt. 105-12 at 5; *see* Dkt. 105-11 at 4 (providing substantially similar language).

Sections 8.c.iii and 8.d of the Sealy MRA provide:

> iii. Retailer shall promptly cease and desist use of all Vendor intellectual property and shall cease and desist holding itself out in any way as an authorized retailer of the Products, *provided* that, unless Vendor repurchases Retailer's inventory of the Products (including floor samples) at fair value, Retailer shall have the right to sell such Products and use Vendor's intellectual property in connection therewith; and
>
> . . . .
>
> d. Notwithstanding Section 8.c.iii, Retailer shall have the right at any time and from time to time after the termination of this Agreement to sell Products

2

that are returned to Retailer, and Vendor grants to Retailer a limited, royalty-free license to use Vendor's trademarks specifically for such purpose.

Dkt. 105-2 at 4. Sections 8.c.iii and 8.d of the Tempur MRA provide:

> iii.   Retailer shall promptly cease and desist use of all Tempur-Pedic® trademarks, tradenames, images, promotional materials and shall cease and desist holding itself out in any way as an authorized Tempur-Pedic® retailer, *provided* that, unless Vendor repurchases Retailer's inventory of the Products (including floor samples) at fair value as specified in clause (iv) below, Retailer shall have the right to sell such Products and, solely in connection with the sale of such Products, use the applicable model name, and brand name, which may contain intellectual property of Vendor; and
>
> . . . .
>
> d.   Notwithstanding Section 8.c.iii, Retailer shall have the right at any time and from time to time after the termination of this Agreement to sell Products that are returned to Retailer and, solely in connection with the sale of such Products, use the applicable model name and brand name, which may contain intellectual property of Vendor.

Dkt. 105-3 at 4–5.

After the Letter Agreements were entered into, and since April 3, 2017, Mattress Firm has used Tempur-Sealy intellectual property in ways other than the display of Tempur-Sealy products. Dkt. 110-14; Dkt. 110-16. For example, Mattress Firm has run advertising campaigns and a website using Tempur-Sealy Marks. Dkt. 110-14; Dkt. 110-16. Tempur-Pedic sued Mattress Firm alleging breach of contract and trademark infringement under common law and the Lanham Act. Dkt. 101. Mattress Firm moves for summary judgment on Tempur-Sealy's claim that it breached the Letter Agreements. Dkt. 105. Tempur-Pedic also moves for summary judgment on that claim. Dkt. 109.

## II. LEGAL STANDARDS

### A.   Summary Judgment

A court shall grant summary judgment if a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P.

56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). "Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to prevail as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs*, 395 F.3d 533, 538–39 (5th Cir. 2004) (footnote omitted). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed R. Civ. P. 56(e). The court must view the evidence in the light most favorable to each non-movant and draw all justifiable inferences in favor of each non-movant. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Shaw Constructors*, 395 F.3d at 539 (footnote omitted).

**B.     Principles of Contract Interpretation**

Under Texas law,[1] the court decides as a matter of law whether a contract is ambiguous "by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Contract language is unambiguous when it "can be given a certain or definite meaning." *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). By contrast, "an ambiguity arises when an agreement is susceptible to more than one

---

[1]The parties agree that Texas law governs this dispute. Dkt. 105 at 11 n.2; Dkt. 110 at 19 n.5. The Sealy Letter Agreement contains a choice of law clause in favor of Texas. *See* Dkt. 105-11 at 3. The Tempur Letter Agreement contains a choice of law clause in favor of Delaware. *See* Dkt. 105-12 at 3. Because the parties agree that Texas law should apply to both agreements and because the principles of contract interpretation are not materially different between Texas and Delaware law, the court will only consider Texas law in construing the Letter Agreements. *See Tremont LLC v. Halliburton Energy Servs.*, 696 F. Supp. 2d 741, 840 (S.D. Tex. 2010).

reasonable meaning." *Id.* If a contract is ambiguous, the parties' intent is a question of fact. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010). However, an unambiguous contract should be interpreted by the court as a matter of law, and the court must enforce the contract as written. *Id.*; *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). The court "should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* The court gives the contract terms their "plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Id.*

### III. ANALYSIS

**A.     Evidentiary Objections**

Mattress Firm objects to Exhibits 5 and 6 attached to Tempur-Sealy's cross-motion for partial summary judgment. Dkt. 113. In particular, Mattress Firm argues that the exhibits are barred by the parol evidence rule. *Id.* at 1. The parties agree that if a contract is unambiguous, the court's interpretation of the contract is "confined to the four corners of the document," and the court "cannot look to extrinsic evidence to create an ambiguity." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006); Dkt. 113 at 1–2; Dkt. 120 at 5. Because the Letter Agreements are unambiguous, the court is barred from using extrinsic evidence to interpret them or create an ambiguity. *Am. Tobacco*, 463 F.3d at 407. Accordingly, Mattress Firm's objections are SUSTAINED.

**B.     Section 6 of the Letter Agreements**

*1.     Contract Interpretation*

The parties' primary dispute is whether Mattress Firm breached Section 6 of the Letter

Agreements. To resolve that dispute, the court must first determine whether Section 6 is unambiguous. Mattress Firm and Tempur-Sealy both argue that it is, but they assert different interpretations. According to Mattress Firm, Section 6 "does not prohibit future lawful uses of Tempur Sealy's brand names and product names . . . . Rather, Section 6 only requires Mattress Firm to 'cease' its *previously authorized use* of Tempur Sealy's intellectual property as an authorized retailer, and, 'to that end,' to 'confirm in writing' that it has complied." Dkt. 105 at 17–18. Tempur-Sealy argues that Section 6 "require[s] Mattress Firm to cease using 'all' Tempur-Sealy names and marks" except that Mattress Firm may "display specific items for sale after the termination of the relationship between the parties even though those goods bore the Tempur-Pedic and Sealy names and marks." Dkt. 110 at 22, 23.

Section 6 provides in relevant part:

> Mattress Firm must promptly cease using all Tempur-Pedic trademarks, trade names, images, and promotional materials ("Tempur IP") and shall cease holding itself out in any way as an authorized Tempur-Pedic retailer, except that Mattress Firm shall be permitted to use only the portion of the Tempur IP described in, and for the limited purpose set forth in, the proviso to section 8.c.iii and in 8.d of the MRA. Accordingly, to that end, Mattress Firm will within 3 days after the IP Cut-Off Date confirm in writing to Tempur-Pedic that it has taken the following actions: (1) taken down all signs in its stores referring to Tempur-Pedic; (2) removed all Tempur-Pedic products and other references to Tempur-Pedic from its website; (3) cancelled all Mattress Firm advertising referring to Tempur-Pedic and (iv) taken all other steps necessary to perform its obligations under this Section 6 . . . .

Dkt. 105-12 at 5; Dkt. 105-11 at 4 (the Sealy Letter Agreement provides substantially identical language, but substitutes "Sealy" for "Tempur-Pedic"). Unambiguously, Section 8 of the MRAs provides an exception to what Section 6 prohibits. Thus, the court cannot interpret Section 6 without also interpreting Section 8.

Sections 8.c.iii and 8.d of the Sealy MRA provide:

> iii.     Retailer shall promptly cease and desist use of all Vendor intellectual property and shall cease and desist holding itself out in any way as an authorized retailer of the Products, *provided* that, unless Vendor repurchases Retailer's inventory of the Products (including floor samples) at fair value, Retailer shall have the right to sell such Products and use Vendor's intellectual property in connection therewith; and
>
> . . . .
>
> d.     Notwithstanding Section 8.c.iii, Retailer shall have the right at any time and from time to time after the termination of this Agreement to sell Products that are returned to Retailer, and Vendor grants to Retailer a limited, royalty-free license to use Vendor's trademarks specifically for such purpose.

Dkt. 105-2 at 4. Sections 8.c.iii and 8.d of the Tempur MRA provide:

> iii.     Retailer shall promptly cease and desist use of all Tempur-Pedic® trademarks, tradenames, images, promotional materials and shall cease and desist holding itself out in any way as an authorized Tempur-Pedic® retailer, *provided* that, unless Vendor repurchases Retailer's inventory of the Products (including floor samples) at fair value as specified in clause (iv) below, Retailer shall have the right to sell such Products and, solely in connection with the sale of such Products, use the applicable model name, and brand name, which may contain intellectual property of Vendor; and
>
> . . . .
>
> d.     Notwithstanding Section 8.c.iii, Retailer shall have the right at any time and from time to time after the termination of this Agreement to sell Products that are returned to Retailer and, solely in connection with the sale of such Products, use the applicable model name and brand name, which may contain intellectual property of Vendor.

Dkt. 105-3 at 4–5.

Because the MRAs contain different language, the court will interpret them separately. Regarding the Sealy MRA, Section 8 allows Mattress Firm to use Sealy's intellectual property in connection with selling Sealy's products. Dkt. 105-2 at 4. Despite Tempur-Sealy's arguments, the language does not limit that use to merely displaying items. *See* Dkt. 110 at 23. As Tempur-Sealy

7

points out, the court cannot "rewrite the contract to add to its language under the guise of interpretation." *Frontier Logistics, L.P. v. Nat'l Prop. Holdings, L.P.*, 417 S.W.3d 656, 660 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). That is precisely what Tempur-Sealy asks the court to do. Accordingly, Tempur-Sealy's interpretation is not reasonable. Section 6 of the Sealy Letter Agreement does not require that Mattress Firm limit its use of Sealy intellectual property to just displaying products.

The Tempur MRA is more limited. Under that MRA, Mattress Firm is limited to using the products' "applicable model name" and "brand name." Dkt. 105-3 at 4–5. But the Tempur MRA still does not contain the limitation Tempur-Sealy suggests—that Mattress Firm can only use the model name and brand name through the display of products at their stores. Once again, the court cannot add a limitation to the contract language that is not present. *Frontier Logistics*, 417 S.W.3d at 660. Thus, Temper-Sealy's interpretation not reasonable.

However, Section 8 of the MRAs refers only to the use of Tempur-Sealy's intellectual property in connection with the sale of Tempur-Sealy's products. Dkt. 105-2 at 4; Dkt. 105-3 at 4–5. Section 8 does not address Mattress Firm's use of intellectual property outside of the sale of Tempur-Sealy's products. For that, the court must turn back to Section 6 of the Letter Agreements.

Section 6 mandates that Mattress Firm "cease using all [Tempur-Sealy] trademarks, trade names, images, and promotional materials" and "cease holding itself out in any way as an authorized [Tempur-Sealy] retailer." Dkt. 105-12 at 5; Dkt. 105-11 at 4. According to Mattress Firm, it must cease its previously authorized use of Tempur-Sealy's intellectual property as an authorized retailer. Dkt. 105 at 17–18. In other words, though Mattress Firm cannot use Tempur-Sealy's intellectual property as it could as an authorized retailer, it can still refer to the Tempur-Sealy brands and products like any other competitor. Dkt. 112 at 7. That is the only reasonable interpretation of the

contract. To "cease" necessarily implies that a current course of conduct is already in place. *See Cease*, Black's Law Dictionary (10th ed. 2014). Thus, by using the word "cease," the parties contemplated Mattress Firm's prior use and contracted that Mattress Firm will no longer engage in that prior use. Tempur-Sealy might argue that if Mattress Firm does not engage in any use of Tempur-Sealy intellectual property, it will have necessarily ceased to engage in that prior use. And though the court does not disagree, the clause does not state that Mattress Firm will cease "*any* use" of Temper-Sealy intellectual property, and the court will not write that term into the contract. *Frontier Logistics*, 417 S.W.3d at 660.

More importantly though, Tempur-Sealy's interpretation renders the clause "shall cease holding itself out in any way as an authorized [Tempur-Sealy] retailer" surplusage. Dkt. 105-12 at 5; Dkt. 105-11 at 4. If, as Tempur-Sealy suggests, Mattress Firm is forever prohibited from using all Tempur-Sealy trademarks, trade names, images, and promotional activities in any manner (subject to the Section 8 exception), then Mattress Firm would already be prohibited from holding itself out as an authorized Tempur-Sealy retailer. The court cannot foresee a situation in which Mattress Firm could hold itself out as a Tempur-Sealy retailer without using, in some manner, a Tempur-Sealy mark or name. Because that clause is rendered surplusage, Tempur-Sealy's interpretation is not reasonable. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003). Thus, Mattress Firm presents the only reasonable interpretation of Section 6. Under Section 6, Mattress Firm must cease its previously authorized use of Tempur-Sealy's intellectual property as an authorized dealer, subject to the Section 8 exception discussed above, and to that end, confirm in writing that it has done so.

*2. Breach*

Having determined that the contract is unambiguous, the court must enforce it as written.

*Grohman*, 318 S.W.3d at 887. Mattress Firm moves for summary judgment arguing that the evidence shows that it complied with its contractual obligation under Section 6 by sending a written confirmation to Tempur-Sealy stating that:

> Mattress Firm hereby confirms that it has ceased use of Tempur IP and Sealy IP, except to the extent permitted under the surviving provisions of the Master Agreements. Mattress Firm has removed all identified exterior signage and nearly 60,000 interior pieces from its 3,500 stores. In the event that any signage has been missed, Mattress Firm's construction team stands ready to address in two business days or less after notification. Further, references to Tempur-Pedic, Sealy and Stearns & Foster products on Mattress Firm's website and marketing have been limited to use in connection with Mattress Firm's closeout of remaining inventory and advising customers in connection with warranty claims.

Dkt. 105-13 at 2. Thus, Mattress Firm presents evidence that it complied with Section 6 and met its initial burden. *Shaw Constructors*, 395 F.3d at 538–39. Tempur-Sealy bases its entire breach theory, at least pertaining to Section 6, on an unreasonable interpretation of the Letter Agreements. Tempur-Sealy argues that Mattress Firm was prohibited from using its intellectual property *at all* and breached that agreement by doing so. Dkt. 110 at 22, 23. However, Tempur-Sealy presents no evidence to create a genuine issue of material fact under Section 6's proper construction and does not meet its burden to avoid summary judgment.[2] *See Shaw Constructors*, 395 F.3d at 539. Thus, Mattress Firm's motion for summary judgment is GRANTED as it pertains to Section 6.

**C. Advertising Requirements**

The parties dispute whether Tempur-Sealy pleaded a breach of its advertising requirements. Mattress Firm argues that the only alleged breach refers to Mattress Firm's use of Tempur-Sealy

---

[2]Tempur-Sealy implicitly concedes this point. Tempus Sealy argues that "[e]ven if Section 6 of the Letter Agreements did not contain the blanket prohibition (and they do), Mattress Firm is still not entitled to summary judgment on Count V of the Fifth Amended Verified Complaint because there remain disputed issues of fact concerning" other provisions of the Letter Agreements. Dkt. 110 at 28. Implicit in Tempur-Sealy's argument is that summary judgment should be granted regarding Section 6 if the court adopts Mattress Firm's interpretation.

Marks after April 3, 2017, and Mattress Firm's failure to confirm in writing its compliance with Section 6 of the Letter Agreements. Dkt. 112 at 11. Mattress Firm contends that Tempur-Sealy did not plead a claim for breach of its advertising requirements, so the court should not consider any alleged breach of those requirements. *Id.* Tempur-Sealy argues that it did plead a claim for breach of Tempur-Pedic's advertising requirements through Mattress Firm's "Once in a Lifetime" and "Dare to Compare" advertising campaigns. Dkt. 110 at 29.

Tempur-Sealy's fifth amended complaint provides in relevant part:

> 39. Mattress Firm has initiated a new advertising campaign focused on selling Tempur-Pedic and Sealy products in its inventory. The campaign promotes a "once in a lifetime" opportunity to save "70%" off famous name brands such a as Tempur-Pedic and Sealy. As part of this new campaign, Mattress Firm replaced many of its old signs with new signs promoting its advertising campaign. Mattress Firm, however, failed to remove references to the Tempur-Sealy Marks in its new signs and advertisements after April 3, 2017 as required under the Letter Agreements.
>
> . . . .
>
> 41. The vast majority of infringing material feature Tempur-Sealy product being discounted or as clearance items. Mattress Firm promised in Section 15 of the Master Retailer Agreements that it would abide by the advertising requirements issued by Tempur and Sealy for retailers using the Tempur-Sealy Marks. Those guidelines expressly forbid the use of discount advertising because it cheapens Tempur-Sealy's premium brand image. Mattress Firm's advertising undermines the significant investment Tempur-Sealy has made to promote that image, and is unfair to retailers who abide by the advertising requirements issued by Tempur and Sealy for retailers using the Tempur-Sealy Marks.
>
> . . . .
>
> 120. Mattress Firm's Dare to Compare advertising campaign breached the Tempur Letter Agreement.[3]

---

[3]The court acknowledges that paragraphs 39 and 41 are not located under Count V (Tempur-Pedic's claim for breach of contract) of Tempur-Sealy's complaint. However, the court will not assume that Tempur-Sealy's failure to include those allegations under Count V indicates that Tempur-Sealy did not intend to assert claims for them.

Dkt. 102 at 10–11, 23.  Section 2 of the Tempur Letter Agreement requires Mattress Firm to comply with Section 15 of the Tempur MRA.  Dkt. 105-12 at 3.  Section 15 of the Tempur MRA states that:

> By Retailer's execution of this Agreement, receipt of email confirmation, order and/or purchasing Tempur-Pedic® products, Retailer agrees to abide by this Agreement, the Advertising, Website and Digital Marketing Requirements and the Tempur-Pedic® Brand Standards Manual, incorporated herein by reference, as may be revised by Vendor from time to time.

Dkt. 105-3 at 7.

Tempur-Sealy alleges a breach of the Tempur Letter Agreement through Mattress Firm's "Once in a Lifetime" and "Dare to Compare" advertising campaigns.  *See* Dkt. 101 at 10–11, 23.  Because the Section 2 of the Tempur Letter Agreement requires Mattress Firm to comply with Section 15 of the Tempur MRA and because Section 15 requires Mattress Firm to comply with Tempur-Pedic's advertising requirements, Tempur-Sealy alleges a violation of Tempur-Pedic's advertising requirements.  Thus, Count V of the complaint alleges both breach of Section 6 of the Tempur Letter Agreement and breach of Tempur-Pedic's advertising requirements, as made applicable through Section 2 of the Tempur Letter Agreement.  Dkt. 101 at 23.  Mattress Firm's motion does not address Tempur-Sealy's claim for breach of the Tempur-Pedic advertising requirements other than arguing that Tempur-Sealy did not plead that claim.  Because Mattress Firm did not address that claim, it did not meet its initial burden to show an absence of a genuine issue of material fact.  *Shaw Constructors*, 395 F.3d at 538–39.  Thus, Mattress Firm's motion for summary judgment is DENIED as it relates to Tempur-Sealy's advertising claims.

However, Count VI (Sealy's claim for breach of contract) does not contain the advertising allegations that Count V contains.  *See id.* at 24.  Further, Tempur-Sealy seems to concede that Count VI does not allege breach of any Sealy advertising requirements.  *See* Dkt. 110 at 28 ("Even if

12

Section 6 of the Letter Agreements did not contain the blanket prohibition (and they do), Mattress Firm is still not entitled to summary judgment *on Count V* of the Fifth Amended Verified Complaint because there remain disputed issues of fact concerning Mattress Firm's performance under *the Tempur Letter Agreement*.) (emphasis added). Thus, under Count VI, Tempur-Sealy only alleges breach of Section 6 of the Sealy Letter Agreement, and the court grants Mattress Firm's motion for summary judgment on that claim. Dkt. 101 at 24; *see supra* Section III.A.

### IV. CONCLUSION

Mattress Firm's motion for partial summary judgment (Dkt. 105) is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to Tempur-Sealy's claim for breach of the Sealy Letter Agreement (Count VI) and with respect to Tempur-Sealy's claim for breach of Section 6 of the Tempur Letter Agreement. Those claims are DISMISSED WITH PREJUDICE. The motion is DENIED with respect to Tempur-Sealy's claim for breach of Tempur-Pedic's advertisement requirements. Tempur-Sealy's cross-motion for partial summary judgment (Dkt. 109) is DENIED.

Signed at Houston, Texas on June 25, 2018.

_____
Gray H. Miller
United States District Judge