UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEMPUR-PEDIC NORTH AMERICA, LLC, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1068 |
| | § | |
| MATTRESS FIRM, INC., | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Mattress Firm, Inc.'s ("Mattress Firm") motion for partial summary judgment. Dkt. 108. Having considered the motion, response, reply, evidence, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

This case involves an on-going business dispute between the plaintiffs, Tempur-Pedic North America, LCC ("Tempur-Pedic"), Sealy Mattress Company ("Sealy"), Dan-Foam APS, and Sealy Technology LLC (collectively, "Tempur-Sealy"), and Mattress Firm. Dkt. 101. Tempur-Sealy is a mattress manufacturer and distributor that owns trademarks for Tempur, Tempur-Pedic, Sealy, Sealy Posturepedic, Sterns and Foster, and others (collectively, "Tempur-Sealy Marks"). Dkt. 3-1; Dkt. 3-2. Mattress Firm is a mattress retailer that sold Tempur-Sealy branded mattresses for nearly twenty years. Dkt. 105-1 at 2. While Mattress Firm was an authorized Tempur-Sealy retailer, the parties' relationships were governed by two Master Retailer Agreements ("MRA") that are substantially similar: one with Sealy ("Sealy MRA") and one with Tempur-Pedic ("Tempur MRA"). *Id.* at 3; Dkt. 105-2 (Sealy MRA); Dkt. 105-3 (Tempur MRA).

In January 2017, the parties dissolved their MRAs. Dkt. 105-1 at 4, 6. Then, Mattress Firm entered into letter agreements with Tempur-Pedic ("Tempur Letter Agreement") and Sealy ("Sealy Letter Agreement") (collectively, "Letter Agreements"), which governed the parties' relationship following the termination of the MRAs. Dkt. 105-12 (Tempur Letter Agreement); Dkt. 105-11 (Sealy Letter Agreement). Under the Letter Agreements, Tempur-Sealy and Mattress Firm agreed that their relationship would continue through April 3, 2017. Dkt. 105-12 at 2; Dkt. 105-11 at 2. Tempur-Sealy agreed to continue to sell its products to Mattress Firm through that date at a volume of up to "110% of the corresponding period in 2016." Dkt. 105-12 at 3; Dkt. 105-11 at 3.

After the parties executed the Letter Agreements, and since April 3, 2017, Mattress Firm has used Tempur-Sealy intellectual property beyond simply displaying Tempur-Sealy products. Dkt. 110-14; Dkt. 110-16. For example, Mattress Firm has run advertising campaigns and a website using Tempur-Sealy Marks. Dkt. 110-14; Dkt. 110-16. Mattress Firm released a YouTube video comparing a Tempur-Pedic mattress with a mattress that Mattress Firm sells. Dkt. 108-2. Mattress Firm also launched a "Dare to Compare" campaign, which invited customers to compare a mattress that Mattress Firm sells—the DreamBed Lux—with the TEMPUR-Cloud® Luxe Breeze mattress ("Tempur Cloud"). Dkt. 180-2 at 3. For these reasons, Tempur-Sealy sued Mattress Firm alleging breach of contract and trademark infringement under common law and the Lanham Act. Dkt. 101.

Mattress Firm moved for summary judgment on Tempur-Sealy's claim that it breached the Letter Agreements. Dkt. 105. Tempur-Sealy also moved for summary judgment on that claim. Dkt. 109. The court held that the Letter Agreements did not limit Mattress Firm's use of Tempur-Sealy Marks to just the display of Tempur-Sealy products. Dkt. 128 at 8. But the court also held that under the Tempur Letter Agreement, Mattress Firm must comply with Tempur-Pedic's advertising

requirements. *Id.* at 12. In the instant motion, Mattress Firm moves for summary judgment on all of Tempur-Sealy's extra-contractual claims. Dkt. 108.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

### A. Counts I–III

Mattress Firm moves for summary judgment on Tempur-Sealy's Lanham Act claims for trademark infringement (count I), unfair competition (count II), and trademark dilution (count III). Dkt. 108 at 10–14. Rather than addressing each claim separately, Mattress Firm addresses the three claims together. *Id.* It argues that its uses do not trigger liability under the Lanham Act. *Id.* These uses include: (1) signs and product references left over from when Mattress Firm was an authorized Tempur-Sealy retailer; (2) Mattress Firm's advertisements to sell its remaining inventory of Tempur-Sealy products; and (3) comparative advertising. *Id.* at 10. Tempur-Sealy argues that Mattress Firm's motion must fail because it does not specify which elements it challenges. Dkt. 116 at 10.

3

The court will consider each use in turn to determine whether Mattress Firm met its initial burden. *See Celotex*, 477 U.S. at 323.

> 1. *Leftover Signs and Product References*

Mattress Firm argues that Tempur-Sealy has no evidence that leftover uses continue to occur, that they will occur in the future, or that Tempur-Sealy suffered any damages. Dkt. 108 at 10. In response, Tempur-Sealy provides evidence illustrating that Mattress Firm did not remove all of its leftover signs and product references, at least as of February 1, 2018. Dkt. 116-1; Dkt. 116-2. Thus, Mattress Firm raises a fact issue regarding whether the leftover uses continue to occur and whether they will occur in the future. In its reply, Mattress Firm argues that "[t]hese isolated and unrelated incidents fall far short of establishing that Tempur Sealy will suffer irreparable harm without a permanent injunction." Dkt. 123 at 3. But at this stage, Tempur-Sealy need not establish that it will suffer irreparable harm. *See* Fed. R. Civ. P. 56(c) (non-moving must show a disputed fact for trial). Given that a fact issue remains (whether Mattress Firm actually removed all of its signs) and that "the determination of whether permanent injunctive relief is warranted is inherently factual," Mattress Firm's motion is DENIED with respect to the leftover signs and product references. *See SEC v. Snyder*, No. H–03–04658, 2005 WL 6443874, at *1 (S.D. Tex. Nov. 3, 2005) (Ellison, J.).

> 2. *Advertisements to Sell Remaining Inventory*

The court's order on Tempur-Sealy's claims for breach of the Letter Agreements resolves much of the parties' dispute on this use. *See* Dkt. 128. In that order, the court determined that the Letter Agreements do not limit Mattress Firm's use of Tempur-Sealy Marks to displaying Tempur-Sealy products. *Id.* at 8. However, the court held that Mattress Firm must comply with Tempur-Pedic's advertising requirements. *Id.* at 12. Thus, Mattress Firm can use Tempur-Sealy Marks to sell its remaining Tempur-Sealy inventory. But any time Mattress Firm advertises Tempur-Pedic

products, such advertisements must comply with Tempur-Pedic's advertising requirements as set out in the previous order. *See id.* at 12.

Mattress Firm argues it is entitled to summary judgment because "Tempur Sealy has no summary judgment evidence that, when Mattress Firm advertised Tempur Sealy products from its remaining inventory for sale using Tempur Sealy's brand and product names, it did so without authorization, or that such uses deceived of [sic] confused consumers in any way." Dkt. 108 at 12. But Mattress Firm does not provide evidence that it complied with Tempur-Pedic's advertising requirements. Thus, it failed to meet its initial burden to show the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.

3. *Comparative Advertising*

Mattress Firm argues that the fair use doctrine protects its use of Tempur-Sealy Marks in comparative advertising. Dkt. 108 at 12. It asserts that "Tempur Sealy has no summary judgment evidence that any of Mattress Firm's comparative advertisements use Tempur Sealy's marks more than reasonably necessary to identify the products, and no evidence that the comparative advertisements suggest an affiliation, sponsorship, or endorsement by Tempur Sealy." *Id.* at 13. However, the court already determined that Mattress Firm's use of Tempur-Sealy Marks went beyond comparative advertising. Dkt. 70 at 18. The court found that Mattress Firm was unlikely to succeed on its nominative fair use defense. *Id.* at 19. Accordingly, the court entered a preliminary injunction requiring Mattress Firm to comply with certain limitations when it used Tempur-Sealy Marks. *Id.* at 25–26.

Now, Mattress Firm asserts that it has complied with the court's preliminary injunction and its advertisements are protected by the nominative fair use doctrine. Dkt. 108 at 13–14. But the preliminary injunction will only remain in effect until final judgment is entered. *SEC v. First Fin.*

5

*Grp. of Tex.*, 645 F.2d 429, 433 (5th Cir. Unit B May 1981). If the court grants summary judgment and the preliminary injunction expires, Mattress Firm could, without violating a court order, engage in its alleged wrongful behavior again. *See Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015). Mattress Firm fails to show that it is "absolutely clear" that its alleged wrongful behavior "could not reasonably be expected to recur." *Id.* (citation omitted). Thus, Mattress Firm did not meet its initial burden to show the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Mattress Firm's motion for summary judgment on counts I–III is DENIED.

**B.     Count IV**

Mattress Firm argues that Tempur-Sealy's false advertising claim fails because its advertisements are not literally false, Tempur-Sealy cannot show actual deception or that the advertisement tends to deceive consumers, and Tempur-Sealy has no evidence of harm. Dkt. 108 at 15–19. Tempur-Sealy responds that because Mattress Firm's advertisements are literally false, it need not show consumer confusion or harm. Dkt. 116 at 19–24.

To state a prima facie case of false advertising, a plaintiff must establish: (1) a false or misleading statement of fact about a product; (2) such a statement either deceived, or had the capacity to deceive a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Derrick Petrol. Servs. v. PLS, Inc.*, No. H–14–1520, 2017 WL 3456920, at *5 (S.D. Tex. Aug. 11, 2017) (Rosenthal, J.) (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)). Mattress Firm challenges Tempur-Sealy's ability to show the first, second, and fifth elements. Dkt. 108 at 15–19.

"If the statement at issue is shown to be literally false, the court must assume that it actually misled consumers, without requiring any evidence of such deception from the plaintiff." *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002); *see also Pizza Hut*, 227 F.3d at 497. "The statements at issue must be a 'specific and measurable claim, capable of being proved false or being reasonably interpreted as a statement of objective fact.'" *Pizza Hut*, 227 F.3d at 496 (citations omitted). If the statements are "either ambiguous or true but misleading" and the plaintiff seeks injunctive relief, the plaintiff must prove that the "defendant's representations 'have a tendency to deceive consumers.'" *Id.* at 497 (citations omitted).

Tempur-Sealy does not present any evidence that Mattress Firm's advertisements tend to deceive consumers. *See* Dkt. 116 at 23 ("[E]vidence of consumer confusion is not required."). Thus, the court only needs to determine whether the advertisements are literally false. If they are not, Mattress Firm is entitled to summary judgment. *See Pizza Hut*, 227 F.3d at 497; Fed. R. Civ. P. 56(c).

Tempur-Sealy argues Mattress Firm engages in false advertising through its YouTube video and its "Dare to Compare" campaign. Dkt. 116 at 20–21. The YouTube video contains the statement: "The DreamBed Lux Costs $1000 Less than TEMPUR-Cloud Luxe Breeze." Dkt. 116-3 at 1. In the "Dare to Compare" campaign, Mattress Firm displays a twin-size Tempur Cloud next to a twin-size DreamBed Lux LX670 mattress. Dkt. 108-2 at 3. The display also contains price tags indicating that a queen-size Tempur Cloud costs $4,799 and the queen-size DreamBed Lux costs $3,799. *Id.*

Tempur-Sealy argues the statement in the YouTube video is literally false because it does not refer to a specific DreamBed Lux mattress, and not all DreamBed Lux mattresses costs $1,000 less than the Tempur Cloud. Dkt. 116 at 21. The court disagrees. The video is ambiguous as to which

7

DreamBed Lux mattress is being compared, but ambiguous statements are not literally false. *Pizza Hut*, 227 F.3d at 497. However, even though the statement is ambiguous, if none of the DreamBed Lux mattresses are $1,000 less than the Tempur Cloud, then the statement could still be literally false and not merely misleading. But Tempur-Sealy does not present any evidence to show that the price of *all* queen-size DreamBed Lux mattresses is within $1,000 of the Tempur Cloud. Thus, Tempur-Sealy does not produce any evidence that the statement in the video is literally false, rather than ambiguous or true but misleading. Accordingly, Mattress Firm's motion for summary judgment is GRANTED with respect to Tempur-Sealy's false advertising claim arising from the YouTube video.

Tempur-Sealy argues that because the actual price of the queen-size DreamBed Lux LX670 is $3,899, the in-store displays are literally false. *Id.* at 22–23. Tempur-Sealy provides evidence that on February 8, 2018, Mattress Firm's website advertised that bed as being on sale for $3,699. Dkt. 116-3. The website listed $3,899 as the regular price. *Id.* Because the regular price is $3,899 and not $3,799, Tempur-Sealy argues that the in-store displays contain false statements. Dkt. 116 at 23. That is enough evidence to create a fact issue about the actual price of the DreamBed Lux LX670. If the actual price is $3,899, then the in-store displays contain literally false statements.

Regarding harm, courts in this district have declined to rule on whether harm is presumed when a fact issue remains about whether a false or misleading statement was made. *See Greater Hous. Transp. Co. v. Uber Tech., Inc.*, 155 F. Supp. 3d 670, 703 (S.D. Tex. 2015). Before the court can decide whether Tempur-Sealy is entitled to a presumption of harm, the threshold fact issue of whether Mattress Firm's displays are literally false must be answered. *See id.* Thus, Mattress Firm's motion is DENIED with regards to Tempur-Sealy's false advertising claim based on the in-store displays from the "Dare to Compare" campaign.

**C. Counts VII–X**

The parties agree that Tempur-Sealy's state-law claims present the same facts and issues as its Lanham Act claims. Dkt. 108 at 19–20; Dkt. 116 at 24–25. Because the court denies Mattress Firm's motion on its parallel Lanham Act claims, the motion is also DENIED with respect to the state-law claims.

**D. Count XI**

Mattress Firm argues that Tempur-Sealy's unjust enrichment claim is not actionable because Tempur-Sealy has available legal causes of action that cover the same subject. Dkt. 108 at 20. However, the Fifth Circuit has allowed an unjust enrichment claim to be brought with Lanham Act claims. *See Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 461–63 (5th Cir. 2017). In *Streamline*, the jury found trademark infringement under the Lanham Act. *Id.* at 446. The jury also awarded damages for unjust enrichment. *Id.* The Fifth Circuit vacated the unjust enrichment damages because the award was not supported by sufficient evidence, not because unjust enrichment was an improper claim. *See id.* at 463. Thus, Mattress Firm's motion is DENIED with respect to Tempur-Sealy's unjust enrichment claim.

**IV. CONCLUSION**

Mattress Firm's motion for partial summary judgment (Dkt. 108) is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to Tempur-Sealy's claim for false advertising arising from the YouTube video. That claim is DISMISSED WITH PREJUDICE. The motion is otherwise DENIED.

Signed at Houston, Texas on July 13, 2018.

Gray H. Miller
United States District Judge

9