UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| TEMPUR-PEDIC NORTH AMERICA, LLC, *et al.*, | § | |
|---|---|---|
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1068 |
| | § | |
| MATTRESS FIRM, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are: (1) defendant Mattress Firm, Inc.'s ("Mattress Firm") motion to exclude the expert testimony of Christine Meyer (Dkt. 106); (2) Mattress Firm's motion for summary judgment on damages (Dkt. 107); and plaintiffs' motion to strike (Dkt. 125) Mattress Firm's supplemental brief. Having considered the motions, responses, replies, evidence, and applicable law, the court is of the opinion that: (1) Mattress Firm's motion to exclude should be DENIED; (2) Mattress Firm's motion for summary judgment should be GRANTED IN PART and DENIED IN PART; and (3) plaintiffs' motion to strike should be GRANTED.

## I. BACKGROUND

This case involves an on-going business dispute between the plaintiffs, Tempur-Pedic North America, LLC ("Tempur-Pedic"), Sealy Mattress Company ("Sealy"), Dan-Foam APS, and Sealy Technology LLC (collectively, "Tempur-Sealy"), and Mattress Firm. Dkt. 101. Tempur-Sealy is a mattress manufacturer and distributor that owns trademarks for Tempur, Tempur-Pedic, Sealy, Sealy Posturepedic, Sterns and Foster, and others (collectively, "Tempur-Sealy Marks"). Dkt. 3-1; Dkt. 3-2. Mattress Firm is a mattress retailer that sold Tempur-Sealy branded mattresses for nearly twenty years. Dkt. 105-1 at 2. While Mattress Firm was an authorized Tempur-Sealy retailer, the

parties' relationships were governed by two Master Retailer Agreements ("MRA") that are substantially similar: one with Sealy ("Sealy MRA") and one with Tempur-Pedic ("Tempur MRA"). *Id.* at 3; Dkt. 111-1 (Sealy MRA); Dkt. 111-2 (Tempur MRA).

In January 2017, the parties dissolved their MRAs. Dkt. 105-1 at 4, 6. Then, Mattress Firm entered into letter agreements with Tempur-Pedic ("Tempur Letter Agreement") and Sealy ("Sealy Letter Agreement") (collectively, "Letter Agreements"), which governed the parties' relationship following the termination of the MRAs. Dkt. 111-4 (Tempur Letter Agreement); Dkt. 111-3 (Sealy Letter Agreement). Under the Letter Agreements, Tempur-Sealy and Mattress Firm agreed that their relationship would continue through April 3, 2017. Dkt. 111-3 at 2; Dkt. 111-4 at 2. Tempur-Sealy agreed to continue to sell its products to Mattress Firm through that date at a volume of up to "110% of the corresponding period in 2016." Dkt. 111-3 at 3; Dkt. 111-4 at 3.

Despite the Letter Agreements, more disputes arose. Tempur-Sealy sued Mattress Firm alleging breach of contract and trademark infringement under common law and the Lanham Act. Dkt. 101. Tempur-Sealy alleges that it suffered actual damages in the form of lost profits due to Mattress Firm's conduct. *Id.* at 31. In the instant motions, Mattress Firm moves to exclude Meyer, Tempur-Sealy's expert on damages, and moves for summary judgment on Tempur-Sealy's claim for damages. Dkts. 106, 107. Tempur-Sealy responded and Mattress Firm replied. Dkts. 114, 121. After filing its reply, Mattress Firm filed a supplemental brief. Dkt. 124. Tempur-Sealy moves to strike that brief. Dkt. 125.

## II. MOTION TO STRIKE

On March 14, 2018, Mattress Firm filed a supplemental brief in support of its motion to exclude Meyer. Dkt. 124. Tempur-Sealy moves to strike that supplemental brief. Dkt. 125. Under the court's scheduling order, Mattress Firm's motion to exclude had to be filed by January 19, 2018.

Dkt. 87. Mattress Firm timely filed its motion to exclude on January 19. Dkt. 106. Tempur-Sealy responded, and Mattress Firm replied. Dkts. 114, 121. The court's procedures allow a movant to file a reply brief, but does not give the movant the right to file supplemental briefing without leave of court. *See* Judge Miller's Procedures ¶ 6(A). Moreover, reply briefs should not exceed five pages in length. *See id.* Mattress Firm's reply brief was six pages, exhausting its allowable page limit. Dkt. 121. Thus, Mattress Firm's supplemental brief required leave of court to be considered.

Mattress Firm did not seek leave when it filed its supplemental brief, but asks for leave in its response to Tempur-Sealy's motion to strike. Mattress Firm does not provide a sufficient basis for the court to grant leave.[1] Mattress Firm could have raised its supplemental grounds for excluding Meyer in its timely briefing, but did not. Accordingly, Mattress Firm's request for leave is DENIED, and Tempur-Sealy's motion to strike is GRANTED.

### III. MOTION TO EXCLUDE

**A.  Legal Standard**

The Supreme Court of the United States acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony. 509 U.S. 579, 597–98, 113 S. Ct. 2786 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles

---

[1] Indeed, Mattress Firm does not provide any basis to grant leave. Dkt. 126 at 1–2. Mattress Firm merely states: "[i]f it is determined that leave is required, then Mattress Firm respectfully asks this Court for leave to file its Supplemental Brief." *Id.*

3

and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999). Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592–93; *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for her testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).

The party offering expert testimony has the burden to prove by a preponderance of the evidence that the proffered testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). The proponent does

not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

**B.     Analysis**

   *1.     Evidentiary Objection*

Tempur-Sealy filed a combined response to Mattress Firm's motion to exclude Meyer and its motion for summary judgment on damages. Dkt. 114. In that response, Tempur-Sealy relies on deposition testimony from Richard Anderson. *Id.* at 8, 15–16. Mattress Firm objects that the relevant portion of Anderson's deposition is hearsay. Dkt. 122. The court does not rely on Anderson's testimony in ruling on the motion to exclude or motion for summary judgment. Thus, Mattress Firm's objection is OVERRULED AS MOOT.

   *2.     Meyer's Expert Testimony*

Mattress Firm argues that Meyer's testimony should be excluded because it is irrelevant and unreliable. Dkt. 106 at 2. It argues that Meyer's testimony is irrelevant because Tempur-Pedic "has not asserted any claim against Mattress Firm for breach of its advertising guidelines." Dkt. 106 at 13. However, the court already ruled that Tempur-Sealy asserts a claim for breach of Tempur-Pedic's advertising requirements. Dkt. 128 at 12. Thus, Mattress Firm's relevancy argument fails.

Mattress Firm argues that Meyer's testimony is unreliable "because it is based on nothing more than a temporal correlation." Dkt. 106 at 13. In her report, Meyer estimates the amount of Tempur-Pedic's lost profits by comparing the amount of Tempur-Pedic's sales before and after Mattress Firm's discount advertising. She concluded that without "the alleged wrongful conduct by Mattress Firm, Tempur-Pedic would have sold substantially more mattresses than it actually did between March and early May 2017," resulting in lost profits of $13.4 million. Dkt. 106-2 at 5. Mattress Firm argues that Meyer's opinion is unreliable because it does not show that the

advertisements caused the decrease in sales, only that the advertisements temporally correlated with the decrease. Dkt. 106 at 14.

The court must decide whether Meyer's method of determining lost profits is reliable. Fed. R. Evid. 702(c). "Texas law recognizes two methods of proving lost profits: (1) the before-and-after method, and (2) the yardstick method." *Thermotek, Inc. v. Orthoflex, Inc.*, No. 3:10–CV–0870–D, 2016 WL 4678888, at *12 (N.D. Tex. Sept. 7, 2016) (citing *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir. 1974) ("There are two generally recognized methods of proving lost profits: (1) the before and after theory; and (2) the yardstick test.")). Tempur-Sealy argues that Meyer uses the before-and-after method. Dkt. 114 at 18. Under the before-and-after method, the plaintiff "compares [its] profit record prior to the violation with that subsequent to it." *Lehrman*, 500 F.2d at 667. Here, Meyer compares Tempur-Pedic's profits before and after the alleged violation. *See* Dkt. 106-2. Thus, Meyer's testimony is based on a reliable method. *Lehrman*, 500 F.2d at 667.

Moreover, Meyer excludes a number of other possible explanations for the reduction in Tempur-Pedic's sales. She ruled out seasonality in mattress sales, the effect of other Mattress Firm advertising, and price increases by other retailers. Dkt. 106-2 at 16–17; Dkt. 115-1 at 56–60. Meyer has adequately considered and eliminated alternative explanations for the reduction in sales in reaching her opinion. *See Pipitone*, 288 F.3d at 248–50 (reversing district court's exclusion of an expert witness, in part because of the expert's failure to eliminate "many viable alternative sources," ruling that the "standard of reliability" applied by the district court was overly stringent) (footnotes omitted); *see also Barclay v. Lloyds*, No. H–14–3649, 2016 WL 164113, at *3 (S.D. Tex. Jan. 14, 2016) (Miller, J.).

Mattress Firm also argues that Meyer's testimony is unreliable because Meyer disregards evidence that disproves her conclusion. Dkt. 106 at 17. Mattress Firm argues that Meyer's opinion

6

disregards that Sealy's sales increased during the same period that Tempur-Pedic's sales decreased. *Id.* at 18. Thus, it argues that Meyer's methodology is invalid, or Sealy would have also suffered from a decrease in sales. *Id.* But Tempur-Sealy does not need to show that Meyer's opinion is correct for it to be admissible. *Moore*, 151 F.3d at 276. Tempur-Sealy must show that Meyer based her opinion on reliable principles. *Id.* Courts recognize the before-and-after method as a means to calculate lost profits, and thus Meyer's opinion is sufficiently reliable to be admissible. Mattress Firm's challenges to Meyer's testimony go to the weight of the evidence, and Mattress Firm will be able to raise those arguments to the fact-finder.

> As the Fifth Circuit noted in *Pipitone*:
>
> > [T]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system. Rather, as *Daubert* makes clear, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits.

288 F.3d at 250 (footnotes and internal quotations omitted). The court must not overstep its role as gatekeeper. Accordingly, Mattress Firm's motion to exclude Meyer is DENIED.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its

burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 524 (5th Cir. 2008).

**B.     Analysis**[2]

First, Mattress Firm moves for summary judgment because Sealy, Sealy Technology LLC, and Dan-Foam APS have no evidence of damages. Dkt. 107 at 6. Tempur-Sealy does not respond to this argument but argues that Tempur-Pedic has provided evidence of damages in the form of lost profits. Dkt. 114 at 5. The court agrees that Tempur-Sealy only attempts to prove Tempur-Pedic's lost profit damages. Accordingly, Mattress Firm's motion is GRANTED with respect to Tempur-Sealy's claim for damages other than Tempur-Pedic's lost profits.

Next, Mattress Firm argues that Tempur-Pedic has no evidence of damages on any pleaded claim other than its claim for nonpayment for goods sold (count 12). Dkt. 107 at 7. It argues that Tempur-Sealy does not plead a claim for breach of Tempur-Pedic's advertising guidelines, and even if it does, its only evidence is Meyer's testimony, which should be excluded. The court already ruled that Tempur-Sealy asserts a claim for breach of Tempur-Pedic's advertising requirements. Dkt. 128 at 12. The court also denies Mattress Firm's motion to exclude Meyer. *See supra* Section III. Thus, both of Mattress Firm's grounds for summary judgment fail. Mattress Firm's motion is DENIED with respect to Tempur-Pedic's lost profit damages.

---

[2]As stated above, the court OVERRULES Mattress Firm's objection to Anderson's deposition testimony. *See supra* Section III.B.1. The court does not rely on Anderson's testimony in ruling on the instant motions. Thus, the objection is moot.

## V. Conclusion

Tempur-Sealy's motion to strike (Dkt. 125) is GRANTED. The court STRIKES Mattress Firm's supplemental brief (Dkt. 124) as untimely and for failing to comply with the court's procedures. Mattress Firm's motion to exclude (Dkt. 106) is DENIED. Mattress Firm's motion for summary judgment on damages (Dkt. 107) is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to Tempur-Sealy's damages other than Tempur-Pedic's lost profits. It is DENIED with respect to Tempur-Pedic's lost profit damages.

Signed at Houston, Texas on July 25, 2018.

_____
Gray H. Miller
United States District Judge